STROFF *et ux.* v. SWAFFORD BROS. *et al.*

1. **Vendor and Vendee:** FRAUD: RESCISSION: EVIDENCE. The evidence in this case (see opinion) is *held* to show that defendants, who knew the value of the property on both sides, conveyed to plaintiffs land in the state of Missouri, worth one hundred and sixty dollars, in exchange for property in Iowa (where all the parties resided) and notes of the plaintiffs, worth in the aggregate twelve hundred dollars, and that defendants induced plaintiffs to make the exchange by false representations as to the quality, location and value of the land; wherefore it is *held* that the decree of the district court rescinding the contract was justified.

2. ———: ———: ———: TENDER. In such case, although defendants had, prior to the beginning of the action for rescission, paid off an incumbrance on the property conveyed by plaintiffs to them, it was not necessary for plaintiffs, in order to recover, to tender the defendants the amount so paid; because defendants had conveyed the property, so that it could not be reconveyed to plaintiffs, and the decree could and did credit defendants with the amount, in fixing the money judgment which they should pay in lieu of the property.

3. ———: ———: ———: EXCESSIVE DEMAND. Nor could a decree for rescission be avoided in such case because plaintiffs, in their offer to rescind, demanded their property back, and also their damages on account of expense and trouble; especially where there was nothing to show that defendants were disposed to make a restitution on any terms.

4.　——: ——: ——: DELAY. Where in such case it appeared that defendants agreed, when the contract was made, that, if their representations were not true, the property of plaintiffs was to be returned and damages paid, an action for rescission, based upon such agreement, could be maintained, though the offer to rescind was not made as promptly as is required where rescission is demanded on the ground of fraud alone.

5.　——: ——: ——: DAMAGE TO LAND IN THE MEANTIME. Nor could defendants in such case avoid a rescission on the ground that, in the meantime, timber had been stolen from the land in Missouri, so that they could not be placed *in statu quo* by a reconveyance to them,—it appearing that plaintiffs had not been in possession of the land, nor responsible for the theft, and that it would doubtless have occurred had there been no change in the title.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

· FILED, JANUARY 28, 1890.

ACTION in equity for the rescission of a contract for the sale of real estate and for general relief.

*Rickel & Crocker*, for appellants.

*William G. Clark* and *James A. Reed*, for appellees.

GRANGER, J.—In January, 1887, the plaintiffs, Charles Stroff and wife, resided at Mount Vernon, Iowa, as did also the defendants, Swafford Bros. On the twenty-eighth of the month they concluded an agreement by which one hundred and twenty acres of land in Missouri was conveyed to Charles Stroff, and in return the home of the plaintiffs, being a house and two lots in Mount Vernon, was conveyed to defendants. Stroff and wife had never seen the land in Missouri, and claim to have taken it on the representations of the defendants. It appears that in making the exchange the Missouri land was valued at twelve hundred dollars, and the house and lots at Mount Vernon at five hundred dollars, on·which there was a mortgage incumbrance of one hundred dollars. The remaining eight hundred dollars for

the Missouri land was secured by notes of Charles Stroff, and a mortgage on eighty acres of the land. The house and lots and the notes given by Charles Stroff were afterwards transferred to third parties by Swafford Bros. Plaintiffs in this proceeding claim that the transaction was fraudulent, because of misrepresentations as to the character and value of the land in Missouri; and also claim upon defendants' alleged agreement that, if the lands in Missouri were not as represented, they would receive the lands back, and restore to plaintiffs their property, with damages resulting to them, because of the misrepresentations. In the district court the issues were found with the plaintiffs, and it ordered a reconveyance of the Missouri lands to the defendants, and gave judgment for plaintiffs for twelve hundred and seventy dollars, being the contract price for the house and lots, and the amount of notes given by Stroff; the money judgment, however, to be satisfied by a surrender of the notes, and a reconveyance of the house and lots.

I. Appellants in argument present several questions for our consideration, the first of which refers to the sufficiency of the testimony to justify a finding of fraud. The testimony and the arguments have received careful attention, and we are satisfied that the defendants have in this case intentionally deceived and wronged the plaintiff. We are first met with the clearly-established facts that the defendants, when making the contract, did not own the Missouri land, but with knowledge of its market, value, having first secured a sale, and knowing the plaintiffs to have no knowledge of the land, they paid what they must have known to be its value, one hundred and sixty dollars, and received therefor from the plaintiffs twelve hundred dollars. It is further clearly established that at the time of making the contract the parties both lived at Mount Vernon, Iowa; that the defendants were men of business experience, and to some extent engaged in real-estate business; that the plaintiffs were persons of

1. VENDOR and vendee: ffraud: rescission: evidence.

foreign birth and education, without business expe-
rience, or a purpose to engage in it, within the ordinary
acceptation of the term; that they were purchasing the
Missouri land for a home, and absorbing their home in
Iowa for that purpose, having very little means; that
the Missouri land was in a spur of the Ozark mountains,
and unsuited for the purposes of a farm or a home for
the plaintiffs. These facts in the case are practically
without dispute, and of themselves show that the
transaction, in its advantages, is all on one side. We
have, then, a case, upon facts barely questioned, where
one party knowing the values of the property on both
sides of the transaction, has, as a result of the igno-
rance of the other party, absorbed his property for a
trifle more than a tithe of its value. This is an advant-
age that an honest dealer never takes. Parties thus
situated may sometimes be so hedged about by legal
advantages as to receive protection, but a court of
equity always views such a transaction with jealousy
and mistrust. The party before a court of equity, ask-
ing that such advantages be legalized, should have his
decree if he clearly stands within the shadow of the
law; but upon questions of fact, when confronted by
witnesses and circumstances which militate against him,
he stands at a singular disadvantage. As to the repre-
sentations made at the time of the transaction, the testi-
mony is conflicting. We do not fully set out the
testimony, and extended comments are unnecessary.
Charles Stroff testifies that the defendants represented
the land to be good soil, like that near Mount Vernon;
that there were twenty-five or thirty acres of good land
on each forty; that he could cut from two to three
hundred ties from each forty acres; that Crocker station
was thirteen miles distant, where he could get fifty
cents apiece for them; and that the land was worth ten
dollars per acre after the ties were removed. Mr. Stroff
is somewhat corroborated by his wife, who says she
could not well understand English, but could under-
stand some, and she was present when the conversation

took place. Speaking of the conversation, she says: "Mr. Swafford told us not to be afraid of them, and turned to me and said: 'If the land is not what I say,' he said we could come back and he would pay the loss, and that it was twenty-five to thirty in each good land, good farming land." A Mr. Perkins, against whose credibility plaintiffs earnestly contend, says he was present when the trade was talked, and he corroborates Mr. Stroff in his statements. Touching the value of the land, the defendants made statements to others fixing the value at ten dollars per acre, while their correspondence with one Mr. McGregor in Missouri, who held the land for sale, shows that they knew that the land was worth but $1.25 per acre, and was on the market for that price. The defendants in their testimony clearly contradict the plaintiffs as to the representations made, and say that the plaintiffs took the land upon information obtained from other sources, and not upon their representations. If the representations were made as claimed by Stroff, they were grossly false. As a matter of fact, the land was twenty-five miles from the station. The intervening country was so uneven that ten ties would be a load for a team, and, with the expense of making ties on the market at Crocker station, would cost sixty-four cents, and their market value there was but twenty-five cents. Instead of there being twenty-five or thirty acres on each forty suitable for cultivation, there are but twenty-five or thirty acres in the entire tract, and about forty or fifty on which fruit could be raised. The testimony, taken together, impresses one with the belief that the land at this time for use is of no practical value. If it has a present value, it rests largely in its being an article for illegitimate speculation. It is in fact a mountainous tract of land. We believe, from the testimony, that the defendants did make the representations, and with the intent charged by the plaintiffs, and that the plaintiffs should have the relief given below, unless refused on other grounds.

II.   It is said that the decree as entered is wrong, because the defendants, long before there was an effort at rescission, paid off the one-hundred-dollar incumbrance on the house and lots conveyed to them, and there has been no tender of the money back.   Appellees were not required to make such a tender, in view of the fact that the house and lots had been sold by appellants, and on the face of the record they could not be restored.   In fixing the money judgment to be paid in lieu of the house and lots, the decree, in effect, credits appellants with the incumbrance paid.

*2. ——: ——: ——: tender.*

It is urged that appellees, in their offer to rescind the contract after discovering the true condition of the land, demanded seventeen hundred and fifty dollars; or, as we understand the argument, they wanted their property back, and also the damages.   It is likely true that they wanted a return of the property or its value, and, besides, the damages sustained because of expenses and trouble; but we do not understand that more was demanded, and the fact of such a demand would not defeat their right of recovery in this action.   There is nothing to show that appellants were in any manner disposed to make restitution, and were denied the right because of excessive demands.

*3. ——: ——: ——: excessive demand.*

III.   A question is further made that the offer of rescission was not made in time.   We do not enter into a discussion of the testimony and authorities on that question, because it is alleged, and we think proven, that it was agreed, when the contract was made, that, if the representations were not true, the property of appellees was to be returned, and damage paid.   If that is true, appellees had the right to recover on that promise, and, conceding that in such a case a notice or demand for the return of the property would be necessary, the rigid rule claimed as applicable to cases of fraud does not govern.

*4. ——: ——: ——: delay.*

IV.   After the transfer of the land to plaintiffs, considerable of the timber thereon was cut off by timber

thieves, and appellants urge that there can be no rescission of the contract, because the character of the property changed while the title was in the plaintiffs. There can be no question as to the authorities or the law to the effect that before appellees can rescind, and rightfully demand a return of their property, they must put appellants *in statu quo*. Appellants are entitled to the land as it would have been but for the transfer. This, we think, they have done. The property must be treated as belonging to defendants in January, 1887. Plaintiffs never took actual possession of the land, and the change complained of was without their fault, and, we think, would have taken place if the title had been retained by the defendants. If this is so, then the defendants, as to the land, are in the same position they would have been had the transaction not taken place. Certainly they are in such a position, so far as the record can determine such a question. It is not claimed that the timber thefts resulted in any way from the transfer or change of title. The facts are not essentially different from what they would be if a tornado had swept over the land, and destroyed the timber, while the title was in plaintiffs. Surely, such a change in the condition of the property would not defeat the right of rescission.

V. The deed, by order of the court, was made to Swafford Bros., and there appears to be some confusion as to the initials of the members composing the firm; there being C. G., S. G. and L. G. Swafford. The district court found the firm to consist of C. G. and L. G. Swafford. It is urged that the testimony shows that the firm consists of C. G. and S. G. Swafford. To avoid any mistake in that respect, it will be here so decreed, and, as the deed now filed runs to Swafford Bros., the objection made will be fully avoided. We think the decree of the district court, with the slight modification, manifestly just, and it is          AFFIRMED.