MRS. C. J. WAKEFIELD, Appellant, v. W. A. COLEMAN, et al., Appellees.

J. A. WAKEFIELD, Appellant, v. W. A. COLEMAN, et al., Appellees.

**Vendor and vendee:** REPRESENTATIONS OF BUYER: WARRANTIES. Representations concerning the location, character and value of land and surrounding improvements, when employed with respect to land subject to inspection by both parties, may amount to nothing more than expressions of opinion; but when the land is at a distance and the buyer relies on the statements of the seller, the same statements may amount to actionable representations and warranties.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF, Judge.

THURSDAY, MARCH 20, 1913.

ACTIONS in equity to rescind contracts for purchase of real estate. Consolidated for purposes of trial and appeal. Decree dismissing bill, and plaintiffs appeal.—*Reversed* and *Remanded.*

*F. D. Williams* and *H. H. Griffiths,* for appellants.

No appearance for appellees.

WEAVER, C. J.—The plaintiffs allege that at the solicitation of the defendants acting by W. J. Coleman, and relying upon representations by him, they severally entered into contracts for the purchase of lots in an alleged town or town plat known as Dallas, in the state of North Dakota, and paid to said Coleman a large part of the agreed price. Among the alleged representations made by Coleman were statements to the effect that the alleged town was located on a line of railway in a well-improved farming community in a county as well settled as the counties of Polk and Dallas in Iowa, that grain elevators, shops, and stores were being or about to be erected there, and that lands in that vicinity were very productive and valuable. They further say that they had no personal acquaintance with or knowledge of said property, or of its location, surroundings, improvements, or value, but relied upon the statements of Coleman with reference thereto, and they charge that said representations were false, and that the property so sold to them was and is of no value whatever. Because of the fraud thus alleged to have been practiced upon them, they ask that said contracts be rescinded and that they have judgments against the defendants for the amount of the payments made thereon and for general relief. The plaintiff Mrs. C. J. Wakefield also holds assignments of the claim sued upon by J. A. Wakefield, and of other similar causes of action against defendants in favor of four other persons, to wit, Mrs. Fidlington, Miss Bristol, Miss Burnett, and Miss Campbell, all of whom made similar purchases of Dallas lots from Coleman, and it is alleged that each and all of such sales were procured by false and fraudulent representations, substantially as averred in the Wakefield cases, and like relief is asked as to each of said contracts.

The answers of the defendants admit the sales mentioned in the petitions, but deny the alleged fraud, and aver that the said purchasers acted solely upon their own judgments in entering into the contracts, and have by their own laches and by failure to pay the unpaid installments permitted their con-

tracts to be forfeited, and are barred from now claiming equitable relief. The decree entered by the trial court, not only dismissed the plaintiffs' petitions, but provided affirmative relief for the defendants, permitting them to deposit in court warranty deeds for the lots not fully paid for and conveyed, and providing, further, that upon failure of plaintiffs to take up said deeds and pay the remaining installments of the purchase price their rights in the property should be considered forfeited.

The appellees have not seen fit to argue their case in this court, but we assume from the record and the view apparently entertained by the court below that they rest upon the theory that plaintiffs failed to establish their allegations of misrepresentations and fraud. Our reading of the testimony leads us to the opposite conclusion. The evidence fairly tends to show beyond any reasonable doubt that the lots in question have not and never had any real value; that the plat was laid out on an open, uninhabited prairie, miles away from any railroad; that it has not and never had an inhabitant: that it has not and never had either shop, store, or other business place, no railroad company was ever organized to build a road to or through the place, and so far as appears no company ever contemplated or proposed to construct or operate such a line. The country round about is sparsely settled, the estimate being an average of one home to a square mile, and the land is to a great extent of inferior quality and value. So far as appears, no person or corporation ever seriously contemplated the location or development of a town at that point. The conclusion from the undisputed facts is practically irresistible that the platting of such town plat and the effort to market the lots in a distant state among women and men of small means and little or no experience, as was evidently done in this case, was simply an adventurous scheme by which the promoters might get something for nothing, or at least to dispose of property of a merely nominal value at a grossly excessive price. Such a scheme has nothing to com-

mend it to a court of equity, and such methods of speculation demand and should have close scrutiny to prevent the accomplishment of fraudulent results.

The plaintiffs' case is supported by the united testimony of a half dozen witnesses. It is met by the testimony of Coleman alone, who denies some of the statements attributed to him and modifies others. Some of his denials are equivocal, and some of his explanations do not explain. It may further be said that he admits much which tends to corroborate the charges made by plaintiffs. In addition to portraying the natural advantages of the location of Dallas, which, to state it mildly, lost nothing in the telling, and while denying that he represented a railroad in actual existence there, or in course of construction, he concedes that he did exhibit to them a map and plat with lines drawn indicating a railroad, which he told his customers was expected or hoped for at an early date. He claims that he had talked with the president of some railroad, trying to induce him to take hold of such enterprise, and had the agreement of one or more farm owners to donate the right of way for a road if one was ever built; but so far as he shows he never had the promise or agreement of any person or corporation to undertake it, or any encouragement in that direction, and had no reason whatever to believe that such a road would be constructed. He admits, also, showing the plaintiff and others photographs of fine farm buildings, grain elevators and piles of unsheltered grain waiting for transportation to market, and other things of that nature, but says that they were pictures of conditions in other parts of that region, and he did not represent them as exhibits of Dallas and its neighborhood. The preponderance of evidence is that he did represent to one of the plaintiffs that the railroad was already constructed. Other witnesses quote him as saying that it was in the course of construction, and would reach Dallas within ninety days, and we have little doubt from the record as a whole that, however vaguely or adroitly the statements were worded, they were intended to impress and

did impress the purchasers with the belief that the town was on the line of a railroad, which, if not already existing, was at least assured, although, as he well knew, such was not the fact.

It is quite likely that the court below reached its conclusion upon the theory that Coleman's statements were within the limits of the allowable puffing and praise, or mere expressions of opinion, in which a seller may indulge with reference to the property proposed to be sold without becoming liable for false or fraudulent representations; but we think the circumstances here appearing will not justify the application of that rule. The property he was offering to sell was in a distant state. Not one of the purchasers had ever seen or had any knowledge whatever of its condition, quality, or value. They say they relied upon Coleman's statements in that respect, and it is quite evident that they did so rely. Language which might well pass as expressions of opinion or words of mere praise, were the property present, in view of both buyer and seller, will often amount to representation or warranty, when the property is at a distance, and the buyer must rely upon the seller for the facts with reference thereto. See *Land Co. v. Heilman,* 80 Iowa, 477: *Brown v. Holden,* 120 Iowa, 195; *McDonald v. Benge,* 138 Iowa, 591; *Stroff v. Swafford,* 79 Iowa, 135; *Scott v. Burnight,* 131 Iowa, 507, and the many other cases in which these cases have been cited and followed. Our views of the facts and of the law governing the issues require a reversal of the decree below and the granting of the relief prayed in the petitions.

The plaintiff, Mrs. C. J. Wakefield, as party to one of the contracts of purchase and as assignee of the rights of J. A. Wakefield, Luella Bristol, Emily Burnett, Mrs. M. Fidlington, and Rachel E. Campbell, is held entitled to a cancellation of each of said contracts upon which no deed of conveyance has been delivered, and cancellation of the promissory notes, if any are outstanding, which were given in consideration of such purchases, and for personal judgment against the de-

fendants for so much of the purchase money as may have been paid upon said contracts. With respect to the claims assigned to said plaintiff by Miss Burnett and by Miss Campbell, to whom conveyances had been made by defendants, plaintiff will be entitled to recover damages estimated at the full price paid for the lots so conveyed, less the nominal valuation of $1 per lot, with costs of the action and of the appeal. The cause will be remanded to the district court for the entering of a decree in accordance with the terms here stated.

*Reversed* and *Remanded.*