Selz & Co. v. Belden.

## SELZ & CO. v. BELDEN ET AL.

1. **Attachment :** EVIDENCE: INTENT.  Where the issue is the wrongful suing out of a writ of attachment, based upon the alleged sale of property to defraud creditors, the testimony of the attachment defendant respecting the intent with which he disposed of his property is not admissible.

2. ———— : RELEASE OF PROPERTY : EVIDENCE.  Where the sheriff releases attached property under a bond providing that the obligors shall be liable for any judgment that may be rendered, the property is nevertheless constructively in his possession so long as it is in the possession of the bondsmen, and parol evidence is not admissible to show that the property was in fact released to the owner thereof.

3. ———— : MEASURE OF DAMAGES.  The measure of damages in an action therefor, for the wrongful suing out of an attachment upon a stock of goods, is the cost of replacing the goods at the place where they were levied upon.

4. ———— : ATTORNEY'S FEES : PRACTICE.  In such an action the court may submit to the jury a special interrogatory inquiring whether or not the attachment was wrongfully sued out, and, if answered in the affirmative, the court may then receive evidence of the value of the attorney's services, and fix the amount to be allowed therefor.

| 48 | 451 |
| 84 | 721 |
| 84 | 726 |
| 48 | 451 |
| 88 | 542 |
| 48 | 451 |
| 96 | 366 |
| 48 | 451 |
| 103 | 150 |
| 48 | 451 |
| 144 | 152 |
| 144 | 153 |
| 144 | 163 |

*Appeal from Jones Circuit Court.*

WEDNESDAY, JUNE 5.

THE plaintiffs' action is based on an accepted draft and account. They caused an attachment to issue on the ground that defendants were about to dispose of their property with intent to defraud their creditors. A stock of merchandise was seized under the writ of attachment.

The defendants denied the allegations of the petition, and, as a counter-claim, alleged that plaintiffs had no reasonable grounds for believing defendants were about to dispose of their property, as stated in the petition, and that the attachment was wrongfully and maliciously sued out, whereby they had been greatly damaged, for which they asked judgment. There was a verdict for the defendants and plaintiffs appeal.

*Remley & Ercanbrack*, for appellants.

*Pierce & Bush*, for appellees.

SEEVERS, J.—I. It was a material question whether the plaintiffs had reasonable grounds to believe, at the time the 1. ATTACH- MENT: evidence: intent. attachment was sued out, that defendants had disposed of their property with intent to defraud their creditors.

One of the defendants, being on the stand as a witness, was asked: "Were you, at or prior to the 24th day of May, 1876, disposing of your property for any purpose, or for what purpose?" He replied: "I was disposing of my property as fast as I could for the purpose of paying my debts; was making extra efforts, too." The admission of this evidence is assigned as error.

It has been held, and we incline to think the rule is pretty well established, where an action is brought to set aside a sale as being fraudulent against creditors, that the party charged with the fraud, when on the stand as a witness, may testify as

to what his intent in fact was, in cases where the evidence only tends to establish the fraud.

The rule is different in cases where the law conclusively presumes fraud from a certain state of facts. *Seymour v. Wilson*, 14 N. Y., 567; *Forbes v. Waller*, 25 Id., 430. But, in the present case, the object of the testimony introduced was not to set aside the sale, but to enable the defendants to recover on their counter-claim, because of the alleged fact that the attachment had been wrongfully sued out; the gist of the issue being whether the plaintiffs at that time had reasonable grounds to believe the defendants had disposed of their property with intent to defraud their creditors.

It was immaterial what the intent of the defendants in fact was; they may have acted with the utmost good faith. The true question is, had they so conducted themselves as to give the plaintiffs reasonable grounds to believe their intent was fraudulent?

It is evident, we think, the secret intent of the defendants cannot be admissible to establish this issue. All the facts and circumstances attending the alleged fraudulent sales were undoubtedly admissible, but the defendants could not testify as to their intent in fact.

II. The defendants claim they are entitled to recover 2. ———: such damages as they may have sustained by release of reason of the detention of the goods that were property. attached up to September, after they were seized, and the plaintiffs insist such damages should be limited to such as occurred up to the 26th day of the previous May.

The solution of these questions depends on the fact whether or not the sheriff surrendered the goods to the defendants on the 26th day of May. On that day Newland and Hakes, who are not defendants in this action or interested therein, executed to the sheriff a bond, whereby they bound themselves to "deliver the attached property to the sheriff, on demand, at the dwelling-house of said H. D. Newland, or pay the amount of said judgment and costs." By the use of the

words "said judgment" the parties meant any judgment that might be obtained in the pending action.

Where property is seized under an attachment proceeding, the sheriff must retain the same in his custody, to abide the judgment of the court, unless there is a statute under which he may relieve himself from such responsibility.

The Code, § 2994, provides that the sheriff may release or surrender the property attached to the defendant, if he causes to be executed a bond to the plaintiff to the effect that he will perform the judgment of the court.

It is not essential that the defendant should sign the bond. It is sufficient if he causes it to be executed. If given to the sheriff instead of the plaintiffs, this fact will not deprive it of its statutory character. *Moorman & Greene v. Collier*, 32 Iowa, 138. But it is essential the obligors should bind themselves absolutely and without condition to perform the judgment of the court. Before the obligors are liable at all on the bond in question they must have refused to deliver the property after due and proper demand is made on them. If they do so, then they are liable to pay the judgment.

The bond recites that the property was placed in the possession of Newland, and there is no provision in it which indicates the goods had been delivered to the defendants. The bond is the contract and must speak for itself. Looking at its terms and conditions we are satisfied the goods were placed in the possession of Newland as custodian for the sheriff, and that the damages of the defendants are to be measured by the length of time they remained in such custody. Evidence tending to prove the same was, therefore, admissible.

The appellants complain of the action of the court in refusing to permit them to prove the intention of the parties in executing the bond, and in allowing the defendants to do so.

The court should have construed the bond, and, in direct terms, told the jury what the rights and liabilities of the parties were under it. Evidence explanatory of the intentions of the parties was, therefore, inadmissible. Such evidence was

useless, as the written contract could not legally be in any respect changed thereby. But the plaintiffs were not prejudiced by the admission of the evidence, and the same may be said as to the sixteenth instruction, because our construction of the bond is in accord with what the jury must have found. These views in no manner conflict with what is said in *Budd v. Durall & Searcy*, 36 Iowa, 315.

III. The defendants introduced evidence tending to prove the value of the goods, which was objected to by the plaintiffs, and they now insist the evidence was inadmissible. Whether it was or not we do not determine, because, after a careful examination of the abstract, we fail to find that any exception was taken to the ruling, and the appellees insist that we cannot, therefore, determine this question. In this view we concur.

IV. The goods attached consisted of dry goods, boots and shoes, some groceries and furs. One Renger was introduced as a witness, and testified he was a merchant of some years' standing; that he saw the goods about ten days before the attachment issued, but did not take particular notice of them; and that he heard the testimony of the witnesses Belden and Newland; whereupon the defendants asked him the following question:

"Suppose this amount of goods were put into boxes in a damp room, and kept there from the 24th day of May to the 25th of September. Suppose they became musty, some are entirely worthless and damaged, and suppose dress goods got spotted, furs eaten by moths, shoes moulded, what in your opinion under a case of that kind, how much less were they worth on the 25th of September than on the 24th of May?"

And the witness answered: "The way these goods were handled, I should say twenty or twenty-five per cent." This evidence having been properly objected to, its admission is assigned as error.

Belden and Newland testified the goods were worth about one thousand four hundred dollars when attached; that they

were badly packed, and the room in which they were kept was damp; that some were damaged and some were not; that some dried fruit, and one or two other articles, were badly eaten by moths and worms. The total value of these articles did not exceed fifty dollars. There was no evidence tending to show to what extent the other goods were musty or moth-eaten. Under these circumstances, we do not think the witness was competent to speak in relation to the extent of the damages. At best, such testimony is somewhat unreliable. The witness did not see the goods after they were attached, and the evidence of Belden and Newland did not describe the extent of the injury sufficiently to enable an expert to form an estimate. The evidence did not rise to the dignity of a matured opinion; it was a mere guess, which one man could make about as well as another.

V. The goods, or some of them, had been on hand for some time, and a portion consisted of a bankrupt stock. The 3. ——: measure of damages. defendants gave evidence tending to show they were worth twenty per cent more than the same goods in Chicago. The plaintiffs asked the court to instruct the jury "that the true measure of the value of the goods should be the cost of replacing them at the place where they were levied on." This was refused; it should have been given. The rule of the instruction would have fully indemnified the defendants, and this was all they could properly have asked.

The instruction was exceedingly favorable to the defendants, for the value of a stock of goods handled as these had been, in the way of retail trade, cannot be worth as much in the market as fresh, new goods would be.

It is true the defendants might have retailed them at twenty per cent over their cost, but this would have involved expense, and if these goods could have been so sold, certainly fresh goods could be at no greater expense.

VI. The nineteenth instruction is objected to because it authorizes the jury to infer from the facts and circumstances

appearing in evidence that the attachment was wrongfully and maliciously sued out, and failed to direct the attention of the jury to the rule that the attachment was not wrongful if the plaintiffs had reasonable grounds to believe the defendants had disposed of their property with intent to defraud their creditors. In previous instructions the court had directed the attention of the jury to the last named rule. We are not prepared, therefore, to say the objection now insisted on is well taken, although on another trial it would be proper for the court to add to the instruction "as heretofore explained to you." This would have the effect of calling the attention of the jury directly to the previous instructions.

VII. It seems to be conceded by counsel for appellants that the defendants are entitled to recover a reasonable attor-

4. ——: attor-   ney's fee if the attachment was wrongfully sued
ney's fees:
practice.        out. Section 2961 of the Code so provides where the action is brought on the bond, and that the amount of the fee "shall be filed by the court." This is evidently a misprint. The original act or enrolled bill in the office of the Secretary of State provides the fee shall be *fixed* by the court.

The objection made to the action of the court is that evidence was introduced before the jury as to the value of the services, and the court said to the jury, in an instruction, the fee had been fixed by the court at one hundred and fifty dollars, and if they found the attachment to have been wrongfully sued out, they should allow the defendants such sum.

It is claimed that plaintiffs were prejudiced by this action of the court. But we do not concur in this view. As the jury have nothing to do with fixing the amount of the fee, the better practice, we think, would be not to introduce any evidence during the trial on that subject, nor should the jury be instructed in reference thereto. A special interrogatory should be propounded to the jury, the answer to which would indicate whether they found the attachment wrongfully sued out or not. If the latter should be found, evidence as to the amount of the fee would be unnecessary, and if the former

should be found such evidence could be introduced to the court and a finding made. The amount of the fee, as fixed by the court, should be added to or deducted from the amount found by the jury, as the case should require.

REVERSED.