FRANCES PETERS, JOHN SNAVELY, H. K. SNAVELY, WILLIAM A. SNAVELY, ELIZABETH EBERLY, ANNA KEPFORD, LIZZIE MILLS, and IRMA BROTEN, Appellants, v. LAURA B. SNAVELY-ASHTON, Appellee.

Attachment: EVIDENCE: HARMLESS ERROR. On an issue as to a wrongful attachment the question involved was whether plaintiff had reasonable ground for believing that the grounds alleged for the attachment were true; and therefore defendants testimony that she was not about to dispose of her property with intent to defraud her creditors, and that she was not about to remove her property out of the State, etc., was inadmissible, over plaintiff's objection; and its admission was not rendered harmless error by the fact that the garnishment was wrongful in any event.

**Same:** WRONGFUL ATTACHMENT: ATTORNEY'S FEES. Attorney's fees for the wrongful issuance of an attachment can only be recovered in a suit upon the bond. See supplemental opinion, *infra*.

**Wrongful Attachment:** DAMAGES. The question of whether the dismissal of plaintiff's petition and the fact that he had no cause of action against defendant was conclusive of defendant's right to recover damages for a wrongful issuance of the attachment is discussed in the opinion but not decided.

**Garnishment:** RELATION OF DEBTOR AND CREDITOR. To hold funds in the hands of a garnishee the relation of debtor and creditor must exist between the garnishee and attachment defendant; so that as in this case the garnishment of an attorney as the debtor of defendant in her individual capacity will not prevent him from paying over funds in his hands belonging to the defendant as trustee.

**Garnishment:** DAMAGES: ESTOPPEL. Where a garnishment was released on the ground that the fund garnished was owing defendant in a representative and not an individual capacity, the defendant is estopped from claiming damages because of the garnishment on the ground that the money was owing to her as an individual.

**Same:** ATTACHMENT BOND: EXTENT OF LIABILITY. Where an attachment bond was conditioned upon the payment of damages to defendant in her individual capacity it will not be extended to cover damages sustained in a representative capacity.

**Wrongful Attachment:** ATTORNEY FEES: STATUTES. Code, section 3887, relating to action on attachment bond for wrongful attachment and the recovery of damages and attorney fees, when construed in connection with the other sections of the statute, does not refer to attorneys fees for securing a release of the attachment, which are a part of the damages sustained, but refers to attorneys fees for prosecuting the action on the bond.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

SATURDAY, MAY 8, 1909.

SUPPLEMENTAL OPINION, TUESDAY, OCTOBER 19, 1909.

ACTION to recover a sum of money from defendant

by reason of the allegation that it has been withheld from plaintiffs, and by defendant converted to her own use. The action was aided by an attachment, which was served by garnishing Hon. Milton Remley, or Remley & Remley, attorneys for defendant. Defendant moved to dissolve the attachment, and the motion was sustained. Defendant then pleaded a counterclaim for the wrongful suing out of the attachment. Plaintiffs thereupon dismissed their action, and the cause finally went to trial upon defendant's counterclaim for the wrongful suing out of the attachment, resulting in a verdict and judgment for defendant against all the plaintiffs in the sum of $1,500. Plaintiffs appeal. —*Reversed.*

*Wade, Dutcher & Davis,* for appellants.

*Milton Remley* and *Ranck & Bradley,* for appellee.

DEEMER, J.—Plaintiffs in their petition alleged that defendant was indebted to them in the sum of $3,500 by reason of the receipt by her of property belonging to Michael Snavely, deceased, which was devised and bequeathed to them by the said deceased. As grounds of attachment plaintiff alleged that the defendant is about to remove her property out of the State, without leaving sufficient remaining for the payment of her debts; that the defendant is a nonresident of the State; that the defendant is about to dispose of her property with intent to defraud her creditors; that she is about to remove her property, or a part thereof, out of the county, with intent to defraud her creditors; that she is about to convert her property, or a part thereof, into money for the purpose of placing it beyond the reach of her creditors; that defendant is about to remove permanently out of the county, and she has property therein not exempt from execution, and that she refuses to pay or to secure these plaintiffs; that she is about

to remove permanently out of the State, and refuses to pay or secure the debt due the plaintiffs. A writ of attachment issued, directing the sheriff to attach the property of defendant, Laura B. Snavely-Ashton, and thereunder Hon. Milton Remley, defendant's attorney, was garnished as a supposed debtor of defendant, and ordered to retain in his possession any money or property belonging to the defendant. The attachment bond was in the sum of $7,000, was signed by Frances Peters as principal and J. L. Peters as surety, and contained the following conditions:

The condition of the above obligation is such that whereas, Frances Peters et al., as plaintiff, did on the 28th day of July A. D. 1896, file his petition in the clerk's office at the district court of Johnson County, Iowa, against Laura B. Snavely-Ashton as defendant, claiming the sum of thirty-five hundred dollars, as money justly due him from said defendant, and asking that a writ of attachment may issue against the property, rights and credits of said Laura B. Snavely-Ashton: Now, therefore, if the said Frances Peters et al. shall well and truly pay unto the said Laura B. Snavely-Ashton all the damages which the said Laura B. Snavely-Ashton shall sustain by reason of the wrongful suing out of said attachment, then this obligation to be void and of no effect; otherwise to remain in full force and virtue.

The action was commenced July 30, 1906, and the garnishment was run on the same day. On September 10, 1906, defendant appeared and filed a motion in the main case, asking that plaintiffs separate their causes of action. On the 11th of the same month defendant filed a motion to discharge the attachment based upon the ground that plaintiffs had no cause of action, because the money held by defendant was in her hands as trustee, and that she was entitled to hold the same until an order of distribution should be made by the court, and for the further reason that the grounds stated for the attachment were false and untrue. This motion was sustained on December 4, 1906.

Defendant's counterclaim on the attachment bond was filed May 8, 1907, and was based upon the untruthfulness of the statements made as grounds for the attachment, and on the further ground that plaintiffs had no cause of action against the defendant. The damages asked were $350 attorney's fees, traveling expenses in attending court $60, loss of time in attendance upon court $50, and for deprivation of the use of her money $540. Defendant also asked exemplary damages in the sum of $1,000. Plaintiffs filed various pleadings to this counterclaim, in which they admitted that Frances Peters gave the bond, but they denied that any attachment was run, or any garnishment served, which would in any manner affect property held by defendant as trustee or executrix, and denied that any damages were suffered by defendant. They also averred that the garnishee held no money belonging to defendant, and also pleaded that the garnishment did not affect any property held by him for defendant as trustee or executrix. They also pleaded the following facts:

That at the time the said writ of attachment therein referred to was sued out, and an attempt was made to garnish Remley & Remley thereunder, this defendant claimed that the funds in the hands of Remley & Remley was the property of M. F. Snavely, and asked for the dissolution of said writ of attachment on the said grounds that subsequent thereto this defendant, as executrix of the estate of M. F. Snavely, filed her report, wherein she undertook to account for the property and funds belonging to said estate; that in said report she accounted for the said money which was in the hands of Remley & Remley as a funds belonging to said estate of M. F. Snavely, deceased, and asked for an order to distribute the same as a part of the property of the said estate; that the court, in passing upon said report, ordered distribution thereof to be made by her as executrix; that the said defendant has at all times treated the said money as the property of the estate of the said M. F. Snavely, and that by reason of the foregoing statements she is now estopped from denying that

said property and all of the same was the property of the said estate of M. F. Snavely, and estopped from making or claiming any individual interest or right therein at the time said writ of attachment was issued and said attempted levy was made.

Some other issues were tendered, which need not be noticed at this time.

In order to show that the attachment was wrongfully sued out defendant was permitted to show, over plaintiffs' objections, that she was not about to dispose of her property

1. ATTACHMENT: evidence: harmless error.

with intent to defraud her creditors, and that she was not about to remove her property out of the State without leaving sufficient remaining for the payment of her debts (as a conclusion of the witness), and as to her intention with reference to making distribution of property then in her hands. Under our previous cases these rulings were erroneous. *Selz v. Belden,* 48 Iowa, 451; *Charles City Plow Co. v. Jones,* 71 Iowa, 234. The reason for this is that the question involved is whether or not she so conducted herself as to give plaintiffs reasonable ground to believe the grounds for attachment were true.

Defendant says, however, that the rulings, though erroneous, were not prejudicial for the reason that the attachment was wrongful in any event, because there was no debt from defendant to plaintiffs. Here again counsel overlook our decisions which hold that there can be no recovery of attorney's fees unless plaintiff had no reasonable cause for believing that the grounds for attachment were true. *Dickinson v. Athey,* 96 Iowa, 363; *Porter v. Knight,* 63 Iowa, 365.

In this connection we may say that instruction No. 8,

2. SAME: wrongful attachment: attorney's fees.

given by the trial court, was erroneous, in that it authorized the jury to allow reasonable attorney's fees to defendant for securing the release of the attached property. Attorney's fees cannot

be allowed save in an action on the bond, and these by stat-
ute are to be fixed by the court.   See Code, section 3887;
*Vorse v. Phillips,* 37 Iowa, 428; *Union Mercantile Co. v.
Chandler,* 90 Iowa, 650; *Plumb v. Woodmansee,* 34 Iowa,
116; *Selz v. Belden,* 48 Iowa, 451; *Kilmer v. Gallaher,* 120
Iowa, 575.

II.   The trial court instructed that the writ was
wrongfully sued out as a matter of law, but left it to the
jury to say as to whether or not plaintiffs had reasonable

3. WRONGFUL
ATTACHMENT:
damages.

cause to believe that the grounds for attach-
ment were true.   That the exact point raised
may be fully understood, we here set forth
the material instructions given upon this subject:

Third.   It having been heretofore determined, as shown
by the evidence in this case, that the writ was wrongfully
sued out as a matter of law, it leaves but the one question
for you to determine, and that is as to whether or not
plaintiffs had reasonable cause to believe the grounds for
which the attachment was sued out; and, if you find that
they did not have, then the defendant would be entitled to
recover such actual damages as she has shown by the evi-
dence she has sustained, and if you should find, as here-
inafter instructed, that the writ was maliciously sued out,
she would be entitled to exemplary damages as hereinafter
instructed, but if you do not so find she would not be en-
titled to recover exemplary damages.   You must, however,
bear in mind that the burden of proof is upon the defend-
ant to establish her cause of action, and the liability of the
plaintiffs, by a preponderance of evidence; and, if she has
not done so, she can not recover.

Fourth.   Now it is claimed that the bond has been
violated or broken because it is claimed that the plaintiffs
wrongfully, wilfully, maliciously, and without reasonable
cause sued out the writ of attachment.   As heretofore in-
structed the writ was wrongfully sued out, and it is for
you to determine from all the evidence as to whether or
not it was sued out without reasonable cause for believing
that the grounds alleged existed or were true, remembering
that the burden of proof is upon defendant, Mrs. Ashton,

to establish this fact by a preponderance of the evidence. Reasonable cause, as used in these instructions, means did plaintiffs exercise that degree of caution that a reasonably prudent man should under such circumstances have good cause for believing that what was stated as grounds for the attachment was true. If you should find that plaintiffs had no reasonable cause for believing such grounds to be true, then defendant is entitled to recover such actual damages as she has shown by the evidence she has sustained; but, if you do not so find, she would not be entitled to recover anything.

On the one hand, it is contended that the court was in error in telling the jury that the attachment was wrongfully sued out; while on the other, it is insisted that, as plaintiffs dismissed their petition, and in truth had no cause of action against the defendant, this was conclusive as to defendant's right to recover the actual damages sustained. Defendant is not appealing, and we have no occasion to determine the correctness of the proposition advanced by her counsel. It has been decided that the dismissal of the suit and the release of the property does not of itself show that the attachment was wrongfully sued out. *Nockles v. Eggspieler,* 47 Iowa, 400; *contra, Young v. Broadbent,* 23 Iowa, 542. And as a general rule, in order that there may be recovery upon an attachment bond, the defendant in attachment must show, not only that the grounds for the issuance of the writ were in fact untrue, but that the attaching plaintiff had no reasonable grounds to believe them true. *Dent v. Smith,* 53 Iowa, 262; *McCormick Co. v. Colliver,* 75 Iowa, 559. It has been intimated, if not decided, in some of our cases that, if the action is upon contract, and there is no debt due, the attachment is wrongful, and recovery may be had upon the bond. *Porter v. Wilson,* 4 G. Greene, 314; *Gaddis v. Lord,* 10 Iowa, 141; *Nordhaus v. Peterson,* 54 Iowa, 68. But see *Smeaton v. Cole,* 120 Iowa, 368; *Frantz v. Hanford,* 87 Iowa, 469. We do not find it necessary at this

time to determine whether or not it is enough to show, in an action on an attachment bond, that nothing was due plaintiff when he brought his action. Of course, in an action for malicious prosecution, independent of the bond, from a finding of nothing due the inference of want of probable cause and malice may be drawn. See *Smeaton v. Cole,* 120 Iowa, 368. But if the action is upon the bond, and is predicated upon section 3887, it may well be doubted whether it is sufficient to show that nothing was due the plaintiff when he commenced his suit. This proposition is not now decided, and this opinion should not be treated as an authority either one way or the other upon this point. The question does not fairly arise upon the record, for the reason that the trial court seems to have held with appellant upon this proposition.

III. The trial court also gave the following instructions:

Sixth. It is claimed by plaintiffs that the funds garnished belong to the defendant as executrix of the estate of M. F. Snavely, deceased, and that she can not recover for a detention of said funds in the hands of the garnishees. In regard to this you are instructed that under the will of M. F. Snavely defendant had a personal interest in said fund, and would be entitled to damages for the wrongful detention of the same, and, further, she was entitled to the possession of all of said fund, and if you find that the plaintiffs directed the garnishment to be made for the purpose of reaching said fund with full knowledge of the source from which they came, then said plaintiffs would be liable to defendant in this action for such damages as she might sustain for the wrongful detention of said fund, if any, provided you have found that same was done without reasonable cause.

Seventh. You are instructed that under the law it was the duty of Remley & Remley and Milton Remley to hold the funds in their hands when they were garnished, and it was not their business to determine whether the funds belonged to the defendant, Mrs. Ashton, individually

or as executrix of the estate of M. F. Snavely.   They did right in holding all of said funds.

These instructions are challenged, and in order to fully understand the situation, it is necessary to consider the facts as they appear of record with reference to the

4. GARNISHMENT: relation of debtor and creditor.

funds in the hands of the garnishee.   Michael F. Snavely died testate in Johnson County, October 19, 1902, leaving a large amount of real and personal property.   Included in said real estate was a farm of one hundred and fifteen acres, which was known as the "Musgrave Farm."   By the terms of his will he devised to his widow, defendant in this action, all of his property for the period of her natural life or until her remarriage; and in the event of her remarriage the life estate was to terminate, and the remainder of his estate, with all accumulations, was to be divided as follows: After some minor bequests, the widow was to receive the sum of $1,000, and the balance of the estate was to be equally divided between the widow and the plaintiffs herein, who are the collateral heirs of the deceased.   This will was admitted to probate November 24, 1902, and defendant was named as executrix, without bond.   On March 4, 1904, defendant made her final report, stating that all debts had been paid, and asking for her discharge.   On the same day her report was approved, and she was discharged. After her discharge defendant remained in possession of all of the estate of her husband, but she made no reports or accounting of any kind to the plaintiffs.   During that time she disposed of some of the real estate, and with the proceeds she acquired title to some property in Ida Grove, Iowa.   In the fall of 1905 she contracted to sell the Musgrave farm for the sum of $8,000, receiving $100 as part payment thereon.   Shortly thereafter a controversy arose between her and the purchaser as to her right to convey, and she instituted an action for specific performance, claim-

ing that she had authority as executrix under her husband's will to make the sale. The court in which the case was tried took this view, and a decree was rendered accordingly. Plaintiffs were then challenging the widow's right to sell, on the ground that she had been discharged as executrix; that she was converting the real estate into money, and was under no bond to protect their interests as remainder-men. After the decree of specific performance was passed, and on the 4th day of June, 1906, defendant married one Ashton, who was a nonresident of the State, and on the 30th day of June plaintiffs commenced this suit, demanding of defendant the sum of $3,500, being one-half of the purchase price of the Musgrave farm, after allowing the defendant the $1,000, to which she was entitled under the will. The writ of attachment commanded the sheriff to levy upon the property of Laura B. Snavely-Ashton, and was served by garnishing Hon. Milton Remley for moneys and credits belonging to defendant. At the time the garnishment was served the garnishee held the $7,900 which had been received from the purchaser of the Musgrave farm, which was, as the garnishee said on the witness stand, the proceeds from the sale of land which belonged to the estate of M. F. Snavely, deceased. When the sale was held, and when the suit was brought for the specific performance thereof, defendant was still the widow of M. F. Snavely, had not been married, and there had been no distribution of the estate. The Snavely will provided: "Fifth. I hereby appoint my wife Laura B. Snavely, executrix of this my last will and testament, and it is my will that in matters pertaining to my said estate and to her rights under this will, she counsel and advise with my nephew Ira J. Snavely. If during her widowhood she deems it best to dispose of any of said balance of my property to which she would be entitled during her widowhood as aforesaid, then she may so dispose of the same, and reinvest the proceeds arising from said sale or disposition in such way as

she may deem best. If she should marry after my decease as contemplated in this will, then as such executrix she shall have power to sell and convey such part of my property and estate as may be necessary or proper for the purpose of making distribution under the items of this will." It was pursuant to these provisions that she made the 'sale of the Musgrave farm, and the will provided that 'distribution should be made as of the date of her marriage.

Defendant's motion to discharge the attachment was based, among other things, upon the ground that she held the money as executrix or trustee, and that no action at law could be brought against her, at least until after a reasonable time for distribution, that no demand had ever been made upon her by plaintiffs, and that no accounting had been had or called for. The motion to discharge was sustained on the theory that defendant was holding the property attached by garnishment either as executrix or trustee, and that plaintiffs were not entitled to any aliquot or other part thereof until an accounting in a court of probate or otherwise. Defendant was not claiming the money attached as her own, nor could she under this record, for it was not hers. She was entitled to it in a representative capacity as trustee or executrix, and upon that theory she secured the release of the garnishment. She does not now claim that in her individual capacity she was entitled to this fund. She and her attorney frankly admit that, save as to $1,000, plaintiffs had as much right to the proceeds as she did, and it must have been on this theory that the garnishment was discharged. In her individual capacity she interposed the counterclaim on the attachment bond, and not as an executrix or trustee, and she was allowed to recover in her individual capacity the damages suffered by reason of the attachment of the money by garnishment, not only to the amount of the share to which she might ultimately be entitled, but to the whole fund. We do not think that the garnishment of the at-

torney as the debtor of defendant in her individual capacity prevented this attorney from paying over the money to the defendant in her representative capacity as trustee or executrix. He, in fact, owed her no more individually than he owed the plaintiffs. He was holding the money for the defendant purely in her representative capacity, and she could not in her own right have recovered the money from him.

This question seems to be ruled by *Victor v. Hawkeye Ins. Co.*, 33 Iowa, 210, where it is said:

The question, then, is simply whether, in the language of our statute, 'it is made to appear that the garnishee was indebted to the defendant.' The service of the garnishment process does not constitute a prohibition of all commercial or business transactions between the garnishee and the judgment or attachment defendant. Its effect is to stop the payment of any debt then owing, or which may be owing at any time subsequent thereto. Revision 1860, section 3209. Our statute, in respect to debts accruing subsequent to garnishment, is broader than the former statutes of Maine, Massachusetts, and other states, which limit the liability of the garnishee to debts owing at the time of garnishment. For cases illustrating the rule or statutes in other States, see authorities cited in Drake on Attachment, paragraphs 667-671. The precise point which we here rule as the substratum whereon our determination of this case rests is that there must be the relation of debtor and creditor, a pecuniary liability between the garnishee and the attachment or execution defendant. If, after the service of the garnishment process, the garnishee shall purchase of the execution or attachment defendant any property for cash in hand then paid him, the garnishee would not be liable upon the garnishment process for the money so paid the debtor. So, also, if after garnishment the garnishee should borrow or hire for a limited time the horse or other property of the debtor, he might return the horse pursuant to the terms of the borrowing or hiring, without liability upon his garnishment, and this, although the statute says that he is liable if he 'had any of the defendant's

property in his hands, either at the time of being served with the garnishee notice, or at any time subsequent thereto.'

This is but an announcement of the universal rule that the demand of the debtor of the attaching plaintiff must be of such a nature that such debtor could have maintained an action of debt in his own right for the recovery of the demand sought to be subjected. See Shinn on Attachment, sections 475, 482, and the many cases cited, among which are *Nims v. Ford,* 159 Mass. 575 (35 N. E. 100); *Hoyt v. Swift,* 13 Vt. 133 (37 Am. Dec. 586); *Webster v. Steele,* 75 Ill. 544. The following among our own cases illustrate the application of this rule: *Cassady v. Grimmelman,* 108 Iowa, 695; *Meek v. Briggs,* 87 Iowa, 610; *Brumwell v. Stebbins,* 83 Iowa, 425; *Mason v. Rice,* 66 Iowa, 174; *Clark v. Shrader,* 41 Iowa, 491. Nothing to the contrary appears in *Cox v. Russell,* 44 Iowa, 556.

The garnishee, Remley, made no answers to the notice of garnishment, and we do not think that under the garnishment he was obliged to hold any funds which belonged to, or was responsible for any debt owing to, defendant as executrix or trustee. She was no more entitled thereto in her individual capacity than were the plaintiffs, who had practically the same interest in the funds that she did. Moreover, it is very clear that in an individual capacity in which she sues on her counterclaim she was not entitled to recover damages for being deprived of the whole fund. The trial court was in error in giving the instructions just quoted to the jury. In her individual capacity defendant was not entitled to any damages due to the garnishment of funds to which she was entitled purely as a representative—a representative for the plaintiffs as well as herself.

It may be that the garnishee was not required to know at his peril to whom the money belonged, but as the re-

lease of the attachment was secured upon the theory that

5. GARNISHMENT: damages: estoppel.

the money was owing to the defendant in a representative capacity, the defendant should not now be heard to say, in an action for damages growing out of the levy of the attachment, that the money was owing her as an individual.

The bond upon which the action is predicated is conditioned upon the payment of damages to defendant in her individual capacity, and liability can not be so extended

6. SAME: attachment bond: extent of liability.

as to justify a recovery of damages sustained in a representative one. *Mason v. Rice,* 66 Iowa, 174, *supra; Rea v. Wilson,* 112 Iowa, 518. The attachment was not sued out until about one month after defendant's remarriage, and there can be no doubt, under the record, that defendant was not entitled to the funds in her individual capacity. We think the trial court was in error in giving the instructions last above set out. Other errors are assigned which, in view of the result reached, need not be considered.

For the errors pointed out, the judgment must be, and it is, *reversed.*

### SUPPLEMENTAL OPINION.

DEEMER, J.—In a petition for rehearing filed by appellee's counsel the conclusion in the first division of the opinion, with reference to the allowance of attorney's fees,

7. WRONGFUL ATTACHMENT: attorney's fees: statutes.

is challenged, and upon a re-examination of the points therein decided, we are of opinion that we were wrong with respect to the propositions there stated. Section 3885 of the Code provides, in substance, that in all cases of attachment plaintiff must give a bond for the use of the defendant in a penalty at least double the value of the property sought to be attached, conditioned that the plaintiff will pay all damages which the defendant may sustain by reason of the

wrongful suing out of the attachment. Section 3880 reads as follows: "If the plaintiff's demand be founded on contract, the petition must state that something is due, and as nearly as practicable, the amount, which must be more than five dollars in order to authorize an attachment." Section 3888 reads in this wise: "The fact stated as a cause of attachment shall not be contested in the action by a mere defense. The defendant's remedy shall be on the bond, but he may in his discretion sue thereon by way of counterclaim, and in such case shall recover damages as in an original action on such bond." And by section 3887 it is provided: "In an action on such bond, the plaintiff therein may recover, if he shows that the attachment was wrongfully sued out, and that there was no reasonable cause to believe the ground upon which the same was issued to be true, the actual damages sustained, and reasonable attorney's fees to be fixed by the court; and if it be shown such attachment was sued out maliciously, he may recover exemplary damages nor need he wait until the principal suit is determined before suing on the bond." In construing these various sections we have heretofore held that if the action be founded on contract, and there was in fact no indebtedness, the attachment is wrongful. *Nordhaus v. Peterson,* 54 Iowa, 68; *Porter v. Wilson,* 4 G. Greene, 314. And we have also held that attorney's fees may be considered as part of the damages suffered by the defendant in case the attachment is wrongfully sued out. *Whitney v. Brownewell,* 71 Iowa, 251; *Connelly v. White,* 122 Iowa, 391.

There is some confusion in our cases upon this subject, due to what we now believe to have been a misapprehension of the effect of section 3887 of the Code. We have said in some of these cases that attorney's fees are to be fixed by the court, and are not to be considered by the jury in awarding the damages. *Dickinson v. Athey,* 96 Iowa, 363; *Porter v. Knight,* 63 Iowa, 365. But in each

of these cases the only question was the allowance of attorney's fees to be made under that section, which are to be allowed, as we now think, as part of the costs, not for defending against the attachment, but for the prosecution of the action on the bond, either in an original proceeding or by way of counterclaim. The statute itself provides that defendant shall be allowed the actual damages sustained and reasonable attorney's fees to be taxed by the court. The attorney's fees here mentioned are not the damages for securing the release of the attachment, but are allowed as part of the costs of the action to recover the damages. This is the only theory upon which such attorney's fees may be fixed by the court. They are not a part of the original damages; for, if they were, a jury and not the court would have power to fix and allow the same. *Weller v. Hawes,* 49 Iowa, 45; *Porter v. Knight,* 63 Iowa, 365. These attorney's fees are not to be considered as part of the damages. In the action on the bond we are constrained to hold that attorney's fees for securing the release of the attachment, or of the attached property, may properly be considered as part of the damages sustained by the attachment defendant. This view finds some support in *Vorse .v. Phillips,* 37 Iowa, 428; *Lyman v. Lauderbaugh,* 75 Iowa, 481; *Union Mercantile Co. v. Chandler,* 90 Iowa, 650; *Behrens v. McKenzie,* 23 Iowa, 333; *Selz v. Belden,* 48 Iowa, 451; *Solomon v. McLennan,* 81 Iowa, 406; *Byford v. Girton,* 90 Iowa, 661. This is the rule in other States. See *Seay v. Greenwood,* 21 Ala. 491; *Swift v. Plessner,* 39 Mich. 178; *Raymond v. Green,* 12 Neb. 215 (10 N. W. 709, 41 Am. Rep. 763); *Buckley v. Van Diver,* 70 Miss. 622 (12 South. 905).

If, then, attorney's fees may be allowed as an item of actual damages, it is clear that the section of the Code has no reference to these, but to attorney's fees for prosecuting the action on the bond. This distinction has not been preserved in our previous cases; but, as it has now

been brought to our attention by learned counsel for appellee, we take advantage of the opportunity to change the original opinion in this respect, and to announce what we believe to be the proper rule. The result is that the original opinion is, so far as it announces views contrary to those here expressed, to that extent modified. In other respects we are satisfied with the original opinion, and the petition for rehearing of the whole case must be, and it is, *overruled.*