MATHER v. ROBINSON.

1. **Evidence**: FRAUDULENT REPRESENTATIONS: VENDOR AND VENDEE. The fact that fraudulent representations respecting the value or income of the property sold were made to another is not competent for the purpose of showing that they were made to the vendee.

2. ——: ——: ——. The books of account which were exhibited to the vendee prior to the sale, and were an inducement thereto, were competent under the issue that the sale was effected by fraud and misrepresentation.

*Appeal from Linn District Court.*

WEDNESDAY, DECEMBER 12.

ACTION to recover for an alleged wrongful taking by defendant of certain personal property belonging to plaintiff. The property consisted of furniture and fixtures used in an eating and boarding house in Cedar Rapids, Iowa. The plaintiff purchased the property of the defendant the 27th day of December, 1875, for the price of $3,000. He paid $300 down and gave his notes for the balance, secured by a chattel mortgage upon the property. The notes were as follows: one for $700, due January 1, 1876, and two for $1000 each, due one in six and one twelve months from date. At the time of the purchase the plaintiff was a stranger in Cedar Rapids. He arrived there on the 21st day of December, 1875. On that day he commenced negotiations for the purchase of the property. They were consummated six days later. The plaintiff avers that he was induced to purchase the property by the fraudulent representations of the defendant. He avers that the plaintiff told him that the furniture and fixtures were in good condition, and of the value carried out in a certain schedule; and he avers that the statements were false and fraudulent. He also avers that the defendant exhibited to him a book containing entries showing the receipts of the house to be from $75 to $100 per day, and that the entries were falsely made by the defendant with intent to defraud the plaintiff. The petition does not state how much less, if any, the property was worth, than it

was represented to be worth. As ground of damages the petition states that on the 15th day of February, 1876, the defendant wrongfully entered upon his premises and wrongfully took all the mortgaged property, amounting in value to $2207.58, and other property of the value of $500, and converted the same to his own use, and by reason thereof his business was broken up and his credit destroyed. The answer does not deny the taking, but avers that the defendant had a right to take the property under the mortgage. At the time of the taking no one of the notes was overdue. The mortgage, however, provided that the mortgagee might take possession whenever he should so elect. The defendant states as a reason for electing to take possession that he sold to the plaintiff in connection with the furniture and fixtures about $800 worth of fuel, groceries and provisions, which were included in the mortgage; that the plaintiff used the articles and did not replace them, and that his security was thereby impaired.

The defendant by cross-petition set up the notes remaining unpaid, and asked judgment for the amount thereof. The plaintiff for reply averred that the consideration had failed, and that they were not yet due. There was a trial by jury, and verdict and judgment for the plaintiff for $1284. Defendant appeals.

*Thompson & Davis* and *Hubbard, Clark & Deacon*, for appellant.

*West & Eastman* and *I. M. Preston & Son*, for appellee.

ADAMS, J.—This action was not brought to recover damages for fraud in the sale. The plaintiff had paid less than the property was worth, according to his admission in the petition, and the notes given for the balance were still in the defendant's possession. Nor is the action brought to procure a cancellation of the notes. It is an action at law for damages alleged to have been sustained by the wrongful taking of the property. But the property was taken under the mortgage, and that provides that it might be taken whenever the mortgagee should elect. Whether the plaintiff was prudent in giving such a

mortgage it is not for us to judge; it was for the plaintiff to judge. It is to be supposed that he knew the desirableness of the trade; that he knew whether the defendant would accept a less stringent mortgage, and what his own resources were, and ability to protect himself by payment if the property should be seized under the mortgage upon the mortgagee's election. We see nothing illegal in the mortgage. Indeed, so far is the provision in question from being obnoxious to the law, it is provided by statute that the mortgagee of personal property shall be entitled to the possession, unless it is stipulated otherwise. The question, then, is as to whether there were any facts extrinsic to the mortgage that rendered it invalid. The plaintiff seeks to treat it as a nullity. The reason given is that the plaintiff was defrauded in the purchase in pursuance of which the mortgage was given. There had, however, been no offer to rescind, and without rescinding something was due to defendant. Whether the mortgage could be treated as a nullity by plaintiff, while he really owed some part of the debt which it was given to secure, is a question which has not been argued by counsel, and is not necessary now to be determined.

Conceding, for the purposes of the opinion, that if there was fraud by defendant in the sale to plaintiff it rendered the mortgage void, we proceed to consider whether the judgment can be sustained, even upon that theory.

I. The plaintiff introduced as a witness one Womly, and asked him a question in these words: "Did you, about the time Mr. Mather purchased, hear Mr. Robinson state what the daily receipts of the house were, exclusive of that received from boarders and the lunch room?" To this question counsel for the defendant objected as immaterial and incompetent unless Mather was present. The objection was overruled and the defendant excepted. The witness answered: "Defendant wanted me to buy the business. I told him it was not worth buying. He then took me in the dining room and showed me the receipts to satisfy me that it was. When he showed me the receipts in a book (which is the same book now in court) I told him

1. EVIDENCE: fraudulent representations: vendor and vendee.

I couldn't nor wouldn't believe that there was any such receipts."

We think the court erred in allowing the question to be answered. It cannot be proven that fraudulent representations are made to one person because the same or other false representations were made to another.

II. The defendant offered to introduce in evidence the books kept by him during the time he was in business, and the only books that he kept, and the books that were exhibited to the plaintiff during the negotiations, to show the receipts of the business. The plaintiff objected, and the objection was sustained. The plaintiff alleges in his petition that false entries had been made in the books by defendant, with intent to cheat the plaintiff. The evidence, however, wholly fails to support the allegation. The plaintiff, in his testimony, said: "Defendant went through the house with me. I looked at the table and crockery, and different things he had in the house, and he showed me the bed-rooms up stairs. I took just a general observation. I then told him I saw nothing worth what he represented, and he told me he considered it worth that. He then took out a book and read to me the daily receipts of this house, stating them to be from $35 to $125 per day, extending over a period of several months back." The defendant, in his testimony, says: "Mr. Mather inquired about the receipts, and here are the books that I exhibited to him. These are the only ones that I ever kept there, and he examined them both. I don't think I gave him any amounts. I explained to him why some days showed so much more than others; they would show up $25 to $30 per day; sometimes on Sunday as low as $15, and then sometimes run up to $100, and perhaps $200, for one day. I explained to him that sometimes my boarders would run along for some time and then pay up. I referred to one man that paid me $50 on one day, and the railroad boys paid once a month." The plaintiff testified that after he took possession the receipts from transient custom were from $15 to $30 per day. The defendant says that with him they sometimes ran as low as $15 per day, and he claims that the very books which the

plaintiff examined showed it. There is one point of difference between plaintiff and defendant. The plaintiff says that he did not examine the books, and that the statement of defendant as to the amounts shown did not include what was received from boarders. The defendant says the plaintiff did examine the books, and that he explained to him that the large amounts were from payments made by boarders. If the books appear upon their face to have been fairly and properly kept, and were examined by plaintiff as the defendant says, and show what he claims, they would tend to rebut the plaintiff's testimony, and corroborate the defendant. In excluding the books we think that the court below erred.

REVERSED.