THE GATE CITY LAND COMPANY v. HEILMAN.

80 477
103 146
80 477
116 557
80 477
o123 646
80 477
137 656

1. **Kind of Proceedings**: OBJECTION TOO LATE. Where defendant moved to transfer the cause to the equity docket, and the court, without formally ruling upon the motion, announced that it would proceed to try the equitable issues raised by defendant's answer, *held* that this was, in effect, a sustaining of the motion, and that, as no exception was then taken, it was too late in this court to raise the objection that the answer presented no equitable issues.

2. **Vendor and Purchaser:** FRAUD OF AGENT TO AVOID SALE: EVI-
DENCE. Where one whom the evidence (see opinion) showed to be
the duly authorized agent of the plaintiff to sell the lots in ques-
tion to defendant effected the sale by making the following repre-
sentations, which were not true, to-wit: *First*, that the lots
were well located and the choicest in the addition ; *second*, that
their cash market value was five hundred dollars, and that other
lots in the same and adjoining additions were rapidly selling at that
price ; *third*, that a cable-car line was then being extended and
constructed to within one block of the lots ; and, *fourth*, that one
of the largest railroad corporations in the west had then located,
and was then constructing, its machine shops, etc., within half a
mile of the lots, *held*—

(1) That the first two were rather representations of opinion
than of fact ; wherefore defendant could not complain of
them, especially in view of the fact that he had entrusted the
selection of the lots to plaintiff's said agent.

(2) That the last two were misrepresentations of facts,—and facts
of such a character that the agent must have known that
his statements were not true ; and that for such fraud upon
the part of the agent the district court rightly rescinded the
sale.

(3) That, in such case, evidence that the agent had made simi-
lar misrepresentations to others was not admissible to prove
that he had made them to the defendant

*Appeal from Ida District Court.*—HON. J. H.
MACOMBER, Judge.

FILED, JUNE 4, 1890.

ACTION to recover upon six separate contracts, in
writing, whereby the plaintiff sold to the defendant cer-
tain lots in Bowling Green addition to the city of
Omaha. Answer in four counts, to the second of which
a demurrer was sustained. The first count is a general
denial. The third admits the making of the contracts, ·
but alleges that defendant's signatures thereto were
obtained by certain fraudulent and false representations
made by one F. G. Mead, he knowing the same to be
false ; the said Mead being employed by plaintiff to
negotiate said property to defendant. The fourth count

The Gate City Land Co. v. Heilman.

alleges that, in addition to the consideration named in said contracts, defendant was induced to convey to plaintiff a certain lot in Ida by said false representations. Defendant asks that his deed be decreed void, and the title revested in him; that said contracts be decreed void and canceled, and that he have judgment for damages. Plaintiff replied, denying that it employed Mead to negotiate the property to defendant, and denying the allegations of fraud. Defendant filed a motion to transfer the cause to equity, for the reason that counts 3 and 4 to the answer raised equitable issues triable to the court. On November 13, 1888, without passing upon said motion, the court directed the reporter to enter upon the notes of proceeding in the case as follows: "The court proceeds to try the equitable issues raised by the defendant's answer. All rulings in the case reserved." The case being fully submitted, decree was entered in favor of the defendant, granting the relief prayed, from which plaintiff appeals.

*Warren & Buchanan* and *Curtis & Keysor*, for appellant.

*C. W. Rollins*, for appellee.

GIVEN, J.—I. Appellant's first contention is that the answer does not set up any equitable defense, and therefore the court, sitting in equity, had no jurisdiction, and the decree is a nullity. The record shows, as already stated, that, without announcing any formal ruling on defendant's motion to transfer the case to equity, the court announced that it would proceed to try the equitable issues raised by the answer. This was, in effect, a sustaining of the motion. It does not appear that any objection was made or exception taken to this action of the court, nor to the court's proceeding, as it did, to hear the case. Appellant is too late in raising this question for the first time in this court.

*1. KIND of proceedings: objection too late.*

II. We next inquire whether the defense pleaded is established, and first whether Mead was employed by the plaintiff to negotiate the contracts sued upon. Testimony was taken, under objection, of Mead's declarations to the defendant and to others that he was agent for the plaintiff. We regard the fact of his agency so satisfactorily established by other testimony, the admissibility of which is not questioned, that we do not consider that objected to, nor pass upon the objection. As showing Mead's employment by the plaintiff, we have the testimony of Mr. Kitchen, one of plaintiff's officers, that, "when I gave Mead my property to make a trade with Mr. Heilman, I made him most decidedly my agent to do the business for me. He made the trade, and was my agent for that purpose." Add to this the fact that Mead alone did negotiate the trade, that no other person on behalf of plaintiff negotiated with defendant, and that Mead received compensation from the plaintiff for his services, and we think the agency is established, without referring to subsequent declarations of Kitchen, or to any other testimony upon the subject. We think it equally clear that Mead was also acting as agent for, and received compensation from, the defendant. But this does not change the fact that he was employed by plaintiff. The extent of his employment by defendant was not as to the terms of the trade, but the selection of the lots to be taken by the defendant.

III. Representations alleged to have been made to induce the trade, and to have been false, were: *First*, that the property was well located, and the very choicest in the addition; *second*, that the cash market value of the lots was five hundred dollars, and other lots in the same and adjoining additions were rapidly selling at that price; *third*, that a cable-car line was then being extended and constructed to within one block of the lots; *fourth*, that one of the largest railroad corporations in the west had then located and was then constructing its machine shops, etc., within

*2. VENDOR and purchaser: fraud of agent to avoid sale: evidence.*

*THE SAME.*

The Gate City Land Co. v. Heilman.

half a mile of the lots. The two first are rather representations of opinion than of fact; and, in view of their character, and of defendants having employed Mead to make the selection of lots for him, these representations are not entitled to further consideration. We inquire as to the remaining two. Testimony was taken, under objection, showing similar representations of Mead to other persons. This testimony is clearly inadmissible, as such representations were not made to, and could not have influenced, the defendant to make the contracts. That Mead did make representations as to a cable line, and as to railroad machine shops, is testified to by several witnesses, and not denied by Mead. The several witnesses speaking of the same conversation do not agree as to the words used by Mead, but all go to show that he made representations on these subjects tending to induce confidence in the value and desirability of the lots, and evidently for the purpose of bringing about the contracts. We are in no doubt, from all the testimony, but that Mead held out to the defendant, as an inducement to make the contracts, that a cable line was then being extended to a point near to said lots, and that a railroad company was constructing shops in the vicinity. Mead does not deny making some statements on these subjects, but does deny that he made them as claimed by the defendant. The extension of a cable line, or the construction of railroad machine shops, are transactions so marked and notorious that no difficulty would exist in establishing the truth of such representations. There is nothing in the testimony tending to show that railroad shops were being constructed, or that any were in contemplation, in the vicinity of the lots; and the only evidence of the extension of a cable line was that some grading had been done upon a street. If it were true that the improvements represented were being made, or were to be made, the truth of the representations could have been established without difficulty, and beyond question. We think the testimony warrants the conclusion that such improvements were not

being made, and that Mead knew that fact at the time he made the representations.

Our conclusion upon the whole record is that the testimony sustains the decree of the district court, and the same is, therefore,                    AFFIRMED.