MICHAEL ZIMMERMAN V. C. B. BRANNON AND C. HOLLI-
DAY, Appellants.

**Fraud in Sale:** EVIDENCE ON INTENT. Where plaintiff alleged fraud in the sale of hogs that he purchased out of a drove, from defend-
1 ants, their statements, as to the soundness of the hogs in the drove, made to other prospective purchasers, are admissible in evidence to show their intent in making representations of sound-
ness to plaintiff.

SAME: Where defendants sold hogs that were affected with cholera
2 and that had come from certain stock yards, where there had been hog cholera for years, it is proper to show that defendants falsely stated that the hogs came from some other place, on the question of fraud in selling the hogs, as tending to show defendant's knowledge as to the condition of the hogs.

CONSTRUCTION OF WARRANTY. Defendant, sued on a warranty, that
4 hogs sold by him were all right and healthy, cannot testify that he did not intend to guarantee the hogs, where his language would fairly import a warranty.

**Instructions.** Though an instruction is erroneous when considered
3 alone, yet it is not reversible error, where such instruction, taken together with other instructions, gives the proper rule, so that the jury could not have misapprehended the law of the case.

*Appeal from Wayne District Court.*—HON. H. M.
TOWNER, Judge.

MONDAY, OCTOBER 11, 1897.

THE defendants bought, at the stock yards at Omaha, Neb., a lot of hogs, and shipped them to Cory-
don, Iowa, and sold four of them to the plaintiff. Three of them afterwards died of hog cholera, or swine plague, and plaintiff brings this action to recover dam-
ages, alleging fraud in the sale, and a warranty that the hogs were sound and free from disease. The answer

was a general denial. Upon the trial there was a ver, dict for the plaintiff, and from a judgment thereon the defendants appealed.—*Affirmed.*

*Miles & Steele* for appellant.

*Freeland & Evans* for appellee.

GRANGER, J. — I. Of the hogs shipped to Cory-don, some were sold to James Keho and to others, and parties talked with defendants with a view of buying, but did not. It appears that some of the hogs were diseased when sold, and died soon after, Keho, and some others, who purchased, and others who talked with defendants about the hogs, but did not purchase, were witnesses for the plaintiff, and were permitted to state, against objections, that defendant Brannon, who did the selling, represented the hogs as all right, and healthy. The court, in admitting the evidence, regarded it proper on the question of fraud. The evidence was as to the same lot of hogs from which plaintiff purchased, and the statements by Brannon were made about the time of plaintiff's purchase, but not in his presence. It appears from the evidence that hog cholera had been in the stock yards at Omaha for years, and that the hogs came from those yards; but it does not appear that any of these hogs were diseased while there. It is in evidence that there was no appearance of disease among those hogs while at the yards in Omaha. It clearly appears that the hogs did not appear well in the yards at Corydon, and that Brannon accounted for their appearance because of being jammed on the train, and worried. There is considerable in the evidence from which it might be found that Brannon had reason to believe the hogs were not healthy; and as he was, at the time of the different conversations, engaged in the sale of the

same lot of hogs, we think his statements to the different persons were proper to be considered in determining his motives or intent in making the representation of soundness to the plaintiff. The rule has clear support in *Porter v. Stone,* 62 Iowa, 442, and also in *Starr v. Stevenson,* 91 Iowa, 684. See, also, *Baldwin v. Short,* 125 N. Y. App. 553 (26 N. E. Rep. 928). In *Mather v. Robinson,* 47 Iowa, 403, it is said: "It cannot be proven that fraudulent representations are made to one person because the same or other false representations were made to another." The statement is not incorrect, taken literally. It should not, however, be construed as meaning that other fraudulent acts may not be shown in corroboration of other proof to show a fraudulent intent, in a proper case. In *Gardner v. Trenary,* 65 Iowa, 646, there is no more than a statement that the rule might be as claimed by appellants in this case, but not an announcement of such a rule. The later cases have clearly put the rule at rest, so that any seeming conflict should be regarded as settled. In *Land Co. v. Heilman,* 80 Iowa, 477, it appears that the representations held to be improperly in evidence were such as could not have influenced the making of the contract, and held improper for that reason. The question involved in this case was not considered in that.

II. Thomas Beal was a witness for plaintiff, and he was permitted to testify that Brannon told him he bought the hogs at Lincoln, Neb. The ruling is thought to be error, because the issues present no such question. There was no error. The testimony was proper on the question of fraud. It appeared that cholera had been in the yards at Omaha, and such a false statement might well be considered on the question of Brannon's knowledge or belief as to the condition of the hogs. The purpose of the statement must have been to avoid the suspicions as to the disease, if the hogs came from the yards at Omaha. It

was a fraudulent statement, made about the time of the sale to plaintiff, and under the rule of *Starr v. Stevenson, supra,* it was proper to be shown.

III.    It is contended by appellants that, in order to constitute a warranty, because of an affirmation of quality, on which the buyer relies, it must appear that the parties, including the seller, intended a warranty; and this seems to be the rule as stated in *Figge v. Hill,* 61 Iowa, 430, and other cases.    The difficulty is, that appellants have selected one instruction, which, considered alone, would be erroneous, but, when considered with other instructions, gives, we think, the rule contended for.    The instructions from 1 to 4 are on the subject of warranty, and the following is No. 2:    "The words 'warrant' or 'warranty' need not be used to constitute a warranty.    Neither is it necessary that it be shown the seller intended to cheat or deceive the purchaser in the sale.    Nor is it necessary, as to this issue, that it appear the seller at the time knew the representations made to be false.    The purchaser has a right to believe and rely on said statements made, if such statements constitute a warranty.    But mere praise or commendation of property offered for sale does not constitute a warranty.    Neither is a bare affirmation of the soundness of an animal exposed for sale, of itself, a warranty.    It must appear that the seller intended, by statements made to the purchaser as to the quality or condition of the thing sold, that such statements should be believed and relied on, and thus be effective and operative in effecting the sale; and this intention is to be determined by the jury from the language used, and the acts of the parties at the time, and the circumstances surrounding the transaction, as disclosed by the testimony."    With other instructions on the subject, it is a full compliance with the rule given in *Figge v. Hill,*

*supra.* The instruction does no less than make the warranty depend on the intention of the parties.

IV. Brannon was a witness for the defense, and on direct examination he was asked this question: "Now, I will ask you to state if, in any of those conversations or statements you had with Mr. Zimmerman at the time he purchased these hogs, or during the negotiations of this trade, if there was any intent on your part to guarantee those hogs." The answer was excluded on objection by plaintiff, and the ruling is said to be error. A rule in substantially the following language has many times been stated: "It is a general rule that, where the intention or motive of a witness is a material question in the case, the witness may state what his intention or motive was." The language quoted was used in *Frost v. Rosecrans*, 66 Iowa, 405. Quite similar language is used in *Watson v. Chesire*, 18 Iowa, 202, and in *Browne v. Hickie*, 68 Iowa, 330. The first two cited cases involve issues of fraud, and in such issues, as well as those involving malice or criminal intent, as material facts in the case, the rule, as stated, is apparently universal. Nearly all the cases to which we are referred involve such issues. See *Heap v. Parrish*, 104 Ind. 36 (3 N. E. Rep. 549); *Kerrains v. People*, 60 N. Y. 221; *Spalding v. Lowe*, 56 Mich. 366 (23 N. W. Rep. 46). In *Delano v. Goodwin*, 48 N. H. 203, an action on contract, the following language is used: "Before the statute making parties competent witnesses, the ordinary way to prove their intent or understanding was by circumstantial evidence. But, now that the party himself is admittted to testify, there is no reason for confining his testimony to a variety of circumstances tending to show his purpose or understanding, when he knows and can testify directly what that purpose or understanding was. Accordingly it has been held, that

where the intention or good faith of a party to a suit becomes material, it may be shown directly as well as from circumstances; and the party himself, if a competent witness, may testify to his intention or understanding, unless prevented by some other principle of law applicable to the case." We have seen no broader statement of the rule than this, and this statement recognizes that there are cases to which the rule is not applicable. We have cited *Browne v. Hickie* as stating the rule of appellant's contention, but it is there stated only to show that the case is an exception, and not governed by it. After citing *Watson v. Cheshire* and *Frost v. Rosecrans, supra,* it is said: "But the present case is not governed by that rule. The questions to be determined were whether the parties entered into a contract for the termination of the lease, and, if so, what were the terms and conditions of their agreement. These questions must be determined from the conduct and language of the parties during the negotiations. If an agreement was entered into by the parties, the undertaking of plaintiff therein must be determined alone from what was said and done by him at the time. His secret motives or intentions are entirely immaterial." The question of intent was as clearly involved in that case as in this. It hardly needs argument to show the danger of such a rule in this class of cases, where, after language is used on which a party relies as a warranty, and on which he has a right to rely, the other party may go behind the fair understanding from his language, and say, "I did not so intend," and thus do injustice to another by taking advantage of his own wrong. The rule that permits the intention to be found from the acts and words of the parties places them on an equality, which is desirable in the administration of justice. The case differs from those in which a specific unlawful intent is pleaded in

avoidance of a contract, as in *Counselman v. Reichart*, 103 Iowa, *post.* See, also, *Selz v. Belden*, 48 Iowa, 451.

V. It is thought that there is a conflict between the second and fourth instructions that constitutes reversible error. We have said that the fourth instruction, taken alone, is erroneous; but, when the instructions are taken together, we think the jury could not have misapprehended the law of the case. Conceding a technical error in the fourth instruction, we should not reverse the case because of it. The judgment will stand AFFIRMED.