CARLETON D. BEH COMPANY, Appellee, v. CITY OF DES MOINES, Appellant.

No. 45127.

Mᴀʏ 14, 1940.

Rᴇʜᴇᴀʀɪɴɢ Dᴇɴɪᴇᴅ Sᴇᴘᴛᴇᴍʙᴇʀ 20, 1940.

Stipp, Perry, Bannister & Starzinger, for appellee.

F. T. Van Liew, B. J. Flick, Sam Orebaugh, and Frank Davis, for appellant.

Rɪᴄʜᴀʀᴅs, J.—In 1924 and 1927 the defendant city assessed against each of numerous tracts of real estate, in a stated amount, a portion of the costs of certain street improve-

ments, and issued a certificate of each such assessment. Each certificate in terms transferred the interests of the city in, and authorized the bearer or assigns to collect and receive, the assessment. Of two of these certificates plaintiff became holder, one issued in 1924, the other in 1927. They bore respectively the serial numbers 1292 and 1265, and their original principal amounts aggregated $9,138.77. In May 1931 plaintiff was making claim against the city for the amount of principal and interest unpaid on the two certificates, on the theory that that amount had become the city's general liability under the holdings in the case of Hauge v. City of Des Moines, 207 Iowa 1209, 224 N. W. 520. On May 14, 1931, the Des Moines city council passed a resolution directing the city treasurer to deliver to the city solicitor four special assessment certificates numbered 1268, 1274, 1682, 1689, amounting in unpaid principal and interest to $7,096.85, together with a city treasurer's check for $3,684.01, all to be turned over by the solicitor to plaintiff in exchange for plaintiff's certificates numbered 1292 and 1265 on which there was unpaid $10,780.86, in settlement of the claim plaintiff was making. On May 15, 1931, the four certificates and the check were delivered to plaintiff, and the latter executed a receipt therefor in full payment, settlement and satisfaction of its claim and turned over to the city its certificates numbered 1292 and 1265. On neither of these certificates have any amounts been collectible since this transaction. Plaintiff soon afterwards dismissed the action commenced upon the claim it was making in reference to certificates 1292 and 1265.

The controversy now before us has to do with certificate numbered 1274. Plaintiff avers that the city expressly warranted that there were no unpaid taxes against the real estate upon which the certificate was a lien, and that this warranty was breached in that the tract had been sold on December 26, 1929, for the general taxes and special assessments then due, pursuant to which sale a treasurer's tax deed issued on March 2, 1933, rendering the certificate valueless, to the damage of plaintiff in the full amount thereof. The case having been

tried to the court without a jury, a judgment was rendered against defendant for $2,498.70, that being the amount of principal and interest unpaid upon certificate 1274. Therefrom defendant has appeared.

One question raised by appellant is whether there was competent evidence that would support a finding that defendant city had expressly made a warranty against unpaid taxes. If the resolution the city council passed on May 14, 1931, is determinative, the answer could not be in the affirmative, for in the resolution the city council made no reference to unpaid taxes, nor did the council therein express any other representation of fact affecting the certificates or the check. On the contrary, the doing of certain things was authorized for the purpose of effecting a settlement of plaintiff's claim, and in the language of the resolution the council directed that these things be done, ''as set out herein''. ''As set out'' in the resolution the whole of the stated undertakings of the city was the turning over of the certificates and check.

This brings us to what plaintiff deems competent evidence that the city expressly warranted that there were no unpaid taxes. Prior to the date of the resolution the defendant's city solicitor and the attorney representing plaintiff in the action brought for the amount of certificates 1292 and 1265 had been conferring between themselves respecting the suit, and had come to what in the record is termed an ''agreement'' that plaintiff, in exchange for certificates 1292 and 1265, should receive certificates 1268, 1274, 1682 and 1689 amounting to $7,096.85 together with a city treasurer's check for $3,684.01. The fact that these attorneys had made this so-called agreement is recited in the preamble of afore-mentioned resolution followed by these words:

''Be It Resolved By the City Council of the City of Des Moines:

''That the City Treasurer be and is hereby authorized and directed to draw a Treasurer's check on the Fifth Street Improvement Fund for $3,684.01, in favor of City Solicitor, and to deliver said check and Assessment Certificates Nos. 1268,

1274, 1682 and 1689 to said City Solicitor for the purpose of carrying out the terms of the agreement with Carleton D. Beh, as set out herein.''

Plaintiff at this point stresses the testimony of the attorney who made the ''agreement'' with the city solicitor. As plaintiff's witness this attorney testified that, prior to the ''agreement'' between him and the city solicitor, one Will Heywood had said to the witness: ''The city has four certificates which are good, no defects in them, and we can trade those to you for these two that are in suit and pay you the difference.'' The witness stated that he told Heywood he would ''recommend that Beh accept it''. He further testified that Heywood gave him an unsigned pencil memorandum that was in Heywood's handwriting. It was introduced in evidence in connection with the testimony of this witness. Therein appear data with respect to each of the four certificates. As to certificate 1274 there are several notations, including information respecting ''other specials'', and the words ''frame house'' and ''regular taxes paid''. The witness also testified that Heywood said he had carefully checked the certificates. He testified that he, the witness, did not take the time or opportunity to investigate the condition of the titles of the properties and relied on Heywood's statement, and thought that he (Heywood) was just as accurate in looking up these things as the witness could be. The information was as accessible, in the county treasurer's office, to the witness as to Heywood. There was no testimony on part of Heywood. He had been deceased for several years at time of the trial. Mr. Beh of plaintiff corporation testified that he had no knowledge, at the time of the settlement with the city, that there were any defects in certificate 1274, and that he made no investigation, and that except with his attorney, he had no conversations about the matter. No inquiry was made of Beh as a witness as to whether or not he was informed of the tax sale before the issuance of the tax deed in 1933.

Plaintiff advances the proposition that ''The representa-

tions made by Will Heywood were express warranties." The query arises whether there was evidence to show the elements that are inherent in and essential to the establishment of such a warranty. We have held that in order to constitute a warranty it is not necessary that the words "warranty" or "guaranty" should be used.

"In case, however, such words or one of them be not used, it is ordinarily incumbent upon the plaintiff to show that the seller made some distinct assertion of quality concerning the thing to be sold as distinguished from a mere statement of opinion or of praise, and that he intended such assertion to be believed and relied on by the purchaser as an undertaking on his part that the article is what he represents it to be, and that it was so understood and believed and relied on by the purchaser. So that a representation or statement of an alleged fact may amount to a warranty if it be made to appear from all the circumstances that the parties intended and so understood it to have that effect. * * * In such a case the question of the intent of the seller is to be gathered from his words and acts and the circumstances, rather than from his own secret thoughts. Zimmerman v. Brannon, 103 Iowa 144 [72 N. W. 439]. But such intent is vital to plaintiff's case." Schlichting v. Rowell, 140 Iowa 731, 735, 119 N. W. 151, 152.

In the case before us evidence is lacking that would warrant a finding that the city intended that Heywood's statements be relied on by plaintiff as undertakings on part of the city. There is no testimony that there was such intention, nor may it be inferred from any of the city's acts or from the circumstances. For concededly Heywood's status was that of a clerical worker employed in the office of the finance commissioner and later in the city solicitor's office. He had no statutory powers. There was no attempt to show that it was any part of his duties, or within any authority he had, to make representations that were to be the city's representations. And though plaintiff's witness testified that there was reliance on what Heywood said and did, any such relying was at plain-

tiff's own peril, for plaintiff was bound at its peril to ascertain and know the extent of Heywood's powers to act on behalf of the defendant municipality. Boardman v. Hayne, 29 Iowa 339. In the case of State v. Haskell, 20 Iowa 276, 280, foreclosure was sought of a mortgage given to one Bird as state school fund commissioner. A surety on the note the mortgage secured defended, averring that his execution of the note was procured by the commissioner's false and fraudulent representations that he had examined the title, that it was all right, and ample security for the note. It developed that the mortgagor had no title. The opinion in the case, noting that the powers of the commissioner were prescribed by statute held that, "such an officer cannot bind the State, when he does an act, or makes a representation, which is *not within the scope of his authority.*" It was also held that:

"'It was no part of the commissioner's duty to make representations to others, with respect to the title or value of the lands appraised to be taken as security. The law confers upon him no such power, and such a power is not necessary to enable him properly to discharge his official duties. It exists, therefore, neither expressly nor by implication. It will be borne in mind that Bird's alleged representations as to the state of the title and value of the land, were not of facts *peculiarly* within his own knowledge, but of facts readily susceptible of ascertainment, equally open to both parties. In such cases the unauthorized act of an agent, especially a public agent whose powers and duties are defined by express statute, are not binding upon his principal or the public. * * * Representations of the character alluded to were representations by Mr. Bird individually, and not as fund commissioner."

We are of the opinion that the record did not warrant a finding that express warranties were made by defendant city. Plaintiff's further proposition is that the alleged representations made by Heywood were a part of the contract of settlement into which the city and plaintiff entered. But as already stated the proposition has no confirmation in the terms

of the resolution, and there is no evidence that would sustain a finding that the city council had any notice or knowledge of anything Heywood had said or done, nor is there any showing that in the negotiations, between plaintiff's attorney and the city solicitor, Heywood's representations had any part, even if such evidence would be material. Plaintiff urges that the city became bound by ratification of Heywood's alleged representations, even if the city council was not advised thereof. We discover no foundation for that position. So far as shown Heywood's representations were in no manner a part of the settlement that was entered into through acceptance by plaintiff of the proposition contained in the resolution. There is some discussion in appellee's argument of alleged implied warranties, but it appears from the pleadings and record that the question is raised here for the first time and accordingly may not be considered.

■ Another question presented is whether a judgment should have been rendered against plaintiff upon defendant's counterclaim. Therein defendant sought recovery of the value of the four certificates and the amount of the treasurer's check, on the ground that same were turned over to plaintiff under the mutual mistaken belief of plaintiff and defendant that the city was liable for the payment of certificates 1292 and 1265; that there having been no such liability the resolution authorizing the turning over of the securities was unauthorized, ultra vires and illegal, having been passed because of said mutual mistake. The counterclaim alleges further that the redemption by the city of certificates 1292 and 1265 was wholly without consideration, said two certificates having been valueless. They were tendered and offered back to plaintiff in the counterclaim as a rescission of the agreement resulting in the alleged ultra vires and illegal transaction.

Situations may arise where a court of equity will grant relief on account of misapprehension of established law. Bottorff v. Lewis, 121 Iowa 27, 95 N. W. 262. But in the case at bar, if there was a mutual mistake it was made on May 14 and 15, 1931, and would be a mistake as to the law as of that

time. As to what the law then was this court had made pronouncements, interpreting certain statutes. On those pronouncements reliance would be justifiable. But they were such that there was room for differences in legal opinion and for exercise of judgment as to the nature of the liability, if any, of a city on special assessment certificates. Concededly there was room for difference of opinion. Being a controversial matter the city chose to pay and settle. There was a compromise made, unassailed in the counterclaim except as has been set out. In argument appellant makes an attack on the manner of procedure in the adoption of the resolution, that allegedly affords a ground for recovery by the city. But that ground does not appear in the counterclaim, and judged from the record it was not an issue prior to the appeal. Nor are we satisfied that the facts on which it is founded appear in the record. We find no error in the court's refusal to enter judgment on the counterclaim.

On account of the error in entering judgment against defendant upon plaintiff's alleged cause of action, the judgment is reversed.—Reversed.

HAMILTON, C. J., and SAGER, MILLER, and HALE, JJ., concur.

MITCHELL and OLIVER, JJ., dissent.

MITCHELL, J. (dissenting)—As I read this record, there is no question but what Will Heywood, an employee of the city of Des Moines, who was at the time assisting as a clerk for the city solicitor, represented that the general taxes on the property covered by the certificates had all been paid.

The city was engaged in settling a lawsuit then pending against it. It was exercising proprietary powers rather than governmental ones, and in conducting proprietary functions the city is to be treated as if it were a private corporation and is subject to the general rules of agency and estoppel. Having ratified the contract of settlement made in its behalf, in my judgment the city of Des Moines should be estopped to deny

the authority of the agents who made the contract, the same as any private principal would be.

As stated by this court in First National Bank of Red Oak v. Emmetsburg, 157 Iowa 555, 568, 138 N. W. 451, 456, I quote:

"There is, in our opinion, no legal reason, and there certainly is no moral one, whereby a municipal corporation should be permitted to reap the benefit of a fully completed contract and escape liability therefor under the plea of ultra vires, where the power exists to contract, but the same has been exercised in a negligent manner and even so irregularly as to release noncontracting parties from liability. That a city may be estopped under such circumstances is well settled by our own decisions."

I would affirm the trial court.

I am authorized to state that OLIVER, J., joins in this dissent.