Douglas E. FLOM and Linda A. Flom, Appellees,

v.

Thomas L. STAHLY and Kathleen E. Stahly, Appellants.

No. 96–221.

Supreme Court of Iowa.

Sept. 17, 1997.

Steven J. Andreasen of Gildemeister, Willia & Keane, Sioux City, for appellants.

Michael W. Ellwanger of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and SNELL, JJ.

McGIVERIN, Chief Justice.

This controversy revolves around alleged defects in a Plymouth County house sold by defendants Thomas L. Stahly and Kathleen E. Stahly to plaintiffs Douglas E. Flom and Linda A. Flom.

In defendants' appeal we must determine whether, in a judgment awarding damages to plaintiffs for defendants' alleged breach of express warranty, the district court erred in: (1) finding a breach of express warranty in connection with defendants' sale of real estate to plaintiffs; (2) finding that the alleged breach proximately caused the damages alleged by plaintiffs; (3) concluding that the comparative fault doctrine did not apply in this situation; and (4) finding plaintiffs proved the amount of damages.

We also must decide, on plaintiffs' cross-appeal, whether the court erred in: (1) failing to apply the theory of implied warranty; (2) precluding testimony of a witness for plaintiffs; and (3) refusing to award prefiling interest.

We conclude that the district court committed no reversible error and thus affirm its judgment.

I. *Background facts and proceedings.* In 1981 Thomas Stahly, a physician, began constructing a large southwestern-style adobe home on an eighty-acre parcel of land he and his wife, Kathleen, had purchased in 1979. The Stahlys planned to live in the house with their five children. Although Dr. Stahly had an interest in southwestern-style architecture and had read extensively on the subject, he had no previous construction training or experience. According to Dr. Stahly, the construction of the house was his "new hobby" and an "experiment." Dr. Stahly did much of the construction himself but hired craftspeople and laborers for some of the work on the home. The Stahlys moved to West Virginia in 1982, before the house was completed, but returned to Plymouth County for a few weeks each year to continue working on the house. The house was otherwise unoccupied.

In April 1991, Douglas Flom, a Sioux City attorney, and his wife, Linda, saw a newspaper advertisement regarding the house and

became interested in the property. After the Floms made an initial visit to the house with a friend of the Stahlys, the Stahlys wrote to Floms and enclosed written materials about the house. These written materials described various aspects of the house and included the following statements regarding the exterior walls and heating system: "The whole outside wall is actually stuccoed double block walls" and "[r]ound, graded insulated [heating] ducts were placed under the floors and 2 to 4 inches of concrete poured around these ducts when the floors were poured." The written materials indicated that the house was approximately 85% finished.

The Floms also visited the property several times while the Stahlys were present. Dr. Stahly walked through the house with Douglas Flom, pointing out certain features and describing some problems he had encountered during his construction of the house. Dr. Stahly gave the Floms numerous photographic slides which showed different stages of the construction.

In addition to their own visits, the Floms had eight or nine construction professionals inspect accessible areas of the house. As a result, the Stahlys subtracted $5,000 from the purchase price because of discovered electrical problems. Based on the opinions of the inspectors, the Floms estimated it would cost $75,000—$100,000 to finish the house, although one inspector felt it would cost $250,000 to complete the project.

In May 1991 the Stahlys and Floms executed a written contract for the purchase by Floms of the home and 23 acres of land. The Floms received, and later exercised, an option to purchase the remaining 57 acres. The total purchase price for the house and acreage was $255,000, with a down payment of $110,000 and the remainder payable in installments. At Douglas Flom's insistence, the written materials earlier given to the Floms by the Stahlys were incorporated by reference into the contract. Accordingly, the contract contained the following paragraph:

> Except for representations made in written materials provided to Buyers by Sellers and except for representations made in this offer to buy, Buyers are purchasing the premises solely based on Buyers' own inspection and not on any statements or representations made by Sellers.

The Stahlys were represented by counsel during the contract negotiations.

The Floms took possession of the property in June 1991 and undertook the completion of the house. Although they initially relied on their own and hired labor, they eventually hired a general contractor for the project. In the course of the work, a foreman found extensive areas of rotten wood and structural unsoundness along portions of exterior walls and support beams leading therefrom. The following areas needed repair: the south bedroom wall, front porch roof, kitchen porch roof, north wall, cheater window wall, and greenhouse. In addition, the ducts used for the subsurface heating system had disintegrated, allowing debris into the system. The Floms informed the Stahlys of the problems and had Floms' contractor remedy the several defects and the heating system.

Because the amount expended by the Floms on repairs exceeded the balance due on the Floms' indebtedness to the Stahlys, the Floms discontinued their installment payments and requested that the Stahlys release them from their outstanding obligation. After the Stahlys served the Floms with a notice to cure the delinquency, the Floms brought their payments up to date. At the time of trial, the balance due under the contract to Stahlys was $130,000.

In December 1994 the Floms filed a petition in district court against defendants Stahly alleging breach of express warranty in the contract, breach of implied warranty, negligent misrepresentation, and negligent construction. The Stahlys answered and asserted affirmative defenses of comparative negligence by Floms and assumption of risk.

The law action proceeded to a bench trial. Expert witnesses for the Floms testified that the problem of rotting wood in the house was caused by improper construction of the walls. They stated that stucco plaster had been applied directly to plywood on the south wall of the house without an intervening moisture barrier. As a result, moisture could be absorbed through the stucco plaster, which is porous, and into the wood, causing seepage

into other beams and supports and major structural problems. According to these witnesses, the use of plywood on the south wall did not conform to the statement in the Stahlys' written materials that the entire outside wall was stuccoed double block walls. Experts testified that the decay of the ductwork for the heating system was caused by the failure to encase the paper-based ducts in concrete, contrary to the assertion made by the Stahlys in the written materials.

Finding that the statements in the Stahlys' written materials constituted express warranties incorporated into the sale contract, the trial court determined that the Floms were entitled to recover damages of approximately $130,000 from the Stahlys for breach of express warranty. The court rejected the Floms' theories of implied warranty, negligent misrepresentation, and negligent construction and found there was no authority for the Stahlys' affirmative defenses of comparative fault by Floms or assumption of risk. The court based the amount of damages on the costs of repairing various components of the house that were covered by the express warranties.

In response to post-trial motions filed by the parties, the trial court rejected the Floms' request for prejudgment interest and expanded its findings to specify that the photographic slides were not a part of the contract between the Floms and Stahlys.

Defendants Stahly appealed, and plaintiffs Flom cross-appealed.

II. *Standard of review.* Our review in this law action is for correction of errors at law. Iowa R.App. P. 4. We are bound by the district court's findings of fact if they are supported by substantial evidence. Iowa R.App. P. 14(f)(1).

III. *Award of damages to plaintiffs.* On appeal, defendants Stahly contend the trial court's award of damages to plaintiffs Flom was improper because the court erred in: (1) finding the Stahlys breached an express warranty; (2) finding any breach proximately caused the damages alleged; (3) concluding the comparative fault doctrine did not apply here; and (4) finding the Floms proved the amount of damages. We now turn to those arguments.

A. *Breach of express warranty.* The Stahlys' challenge to the court's finding of a breach of express warranty in the contract is twofold. First, they argue that the theory of express warranty does not apply to the sale of realty. Second, the Stahlys assert that even if such a theory does apply to the sale of realty, the contract between the Stahlys and the Floms did not contain any express warranties.

■ 1. Defendants Stahly point out that Iowa Code section 554.2313 (1991), which governs express warranties, applies to the sale of goods but not to the sale of realty. Thus, they argue that any authority for applying the theory of express warranty to real estate must come from common law. We find such authority in case law from Iowa and other jurisdictions.

In an early case, we upheld the trial court's finding that a seller's express warranty of "choice, well lying, good soil, and in every respect first-class, tillable farm land" had been breached in a contract action. *Swayne v. Waldo*, 73 Iowa 749, 750, 33 N.W. 78, 78–79 (1887). In *Ales v. Merritt*, 486 N.W.2d 592 (Iowa App.1992), the seller of real estate specifically warranted in the purchase agreement that the plumbing system was in working order. *Ales*, 486 N.W.2d at 593. Although it did not directly address the question of the applicability of express warranties to the sale of realty, our court of appeals recognized the enforceability of the warranty in that case when it determined that the property's septic system was included in the warranty and that the seller was therefore liable for the cost of improvements to the septic system. *Id.* at 594–95.

Other courts have also given recognition to express warranties in contracts for the sale of realty. *See Sweetwood v. Mahoney*, 93 Ill.App.3d 788, 49 Ill.Dec. 184, 186, 417 N.E.2d 874, 876 (1981) (construing express warranty by buyer that no dwelling code violations existed in house sold to plaintiffs); *Woodahl v. Matthews*, 196 Mont. 445, 639 P.2d 1165, 1168 (1982) (impliedly recognizing theory of express warranty in sale of realty but finding that any such warranties in that

case were specifically waived by the contract). The Wisconsin supreme court discussed the applicability of express warranties to the sale of realty in a 1969 case and determined that the legal principles regarding express warranties in the sale of goods were equally applicable in the context of the sale of real estate. *Dittman v. Nagel*, 43 Wis.2d 155, 168 N.W.2d 190, 193 (1969).

We conclude that the theory of express warranty can apply to specific representations or warranties contained in contracts for the sale of real estate.

■ 2. We agree with the trial court and believe there is substantial evidence that the written statements by the Stahlys regarding the construction of the exterior walls and the ductwork for the heating system constituted express warranties. Although words such as "warranty" or "guaranty" need not be used to create an express warranty, the plaintiff must

> show that the seller made some distinct assertion of quality concerning the thing to be sold as distinguished from a mere statement of opinion or of praise, and that he intended such assertion to be believed and relied on by the purchaser as an undertaking on his part that the article is what he represents it to be, and that it was so understood and believed and relied on by the purchaser.

*Carleton D. Beh Co. v. City of Des Moines*, 228 Iowa 895, 900, 292 N.W. 69, 71 (1940) (citing *Zimmerman v. Brannon*, 103 Iowa 144, 147, 72 N.W. 439, 440 (1897)). In this case, the statements at issue were assertions by Stahlys as to the manner in which the walls and heating system were constructed rather than mere expressions of opinion or praise. The parties deliberately chose to make the statements part of their contract, indicating that the statements could be believed and relied upon by the Floms. Defendants concede the statements were part of the sale contract. Douglas Flom testified that he and his wife relied on the statements.

■ Substantial evidence supports the district court's conclusion that the Stahlys' construction of the home did not conform to the representations in the written materials.

Rather than "double block walls," the south wall of the house actually was built of plywood. Similarly, the heating ducts were not encased in concrete as represented in the written materials, but rather were placed directly on the ground. Thus, the ducts deteriorated over time.

The district court did not err in determining that the written statements concerning the exterior walls and heating system constituted express warranties in the contract and that the Stahlys breached those express warranties.

■ B. *Proximate cause.* Defendants Stahly contend the trial court erred in finding the use of plywood rather than double block masonry on the exterior south wall was the proximate cause of the damages alleged by the Floms. They point out that the structure instead could have sustained moisture damage through the direct exposure of window sills, window frames, and support beams to the elements.

However, we believe substantial evidence supports the trial court's findings on this question of fact. The Floms presented expert testimony tending to show that the failure to use the construction techniques specified in the written materials led to the moisture problems in the outer wall and the deterioration of the heating ducts. We find no error here.

■ C. *Comparative fault defense.* The Stahlys claim that the Floms failed to adequately inspect all aspects of the construction and thus the principles of comparative fault as set forth in Iowa Code chapter 668 should preclude the Floms' recovery of damages for breach of express warranty. For the following reasons, we believe the comparative fault statute does not apply in this case.

For purposes of apportioning liability under Iowa's Comparative Fault Act, "fault" is defined as

> one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. *The term also includes breach of warranty,* unreasonable assumption of risk not constituting an enforceable

express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.

Iowa Code § 668.1(1) (emphasis added). While the inclusion of breach of warranty in that provision would seem to indicate the statute should apply in this case, we believe that the legislative purpose of the act, our prior case law, and official comments to the Uniform Comparative Fault Act, from which our act was taken, make it clear the Iowa act applies only when the breach leads to personal injury or property damage apart from the original damage claimed.

The title and purpose of the Iowa Comparative Fault Act states it "relat[es] to *liability in tort* by establishing comparative fault as the basis for liability in relation to claims for damages *arising from injury to or death of a person or harm to property* . . . ." 1984 Iowa Acts ch. 1293 (emphasis added). Thus, the legislature gave no indication it intended the act to apply to claims for purely economic loss or non-torts.

Our prior decisions are consistent with the stated purpose of the statute. In *Waterloo Savings Bank v. Austin,* 494 N.W.2d 715, 717 (Iowa 1993), we emphasized that Iowa Code chapter 668 does not apply when "the claim is contractual in nature." *Accord Vasquez v. LeMars Mut. Ins. Co.,* 477 N.W.2d 404, 409 (Iowa 1991).

Because the Iowa Comparative Fault Act was based on the Uniform Comparative Fault Act and adopted the Uniform Act's definition of fault, *see* Iowa Code § 668.1, the official comments to the Uniform Act are persuasive in discerning the Iowa legislature's intent. *Coker v. Abell–Howe Co.,* 491 N.W.2d 143, 148 (Iowa 1992). Those comments state in part:

An action for breach of warranty is held to sound sometimes in tort and sometimes in contract. There is no intent to include in the coverage of the Act actions that are fully contractual in their gravamen and in which the plaintiff is suing solely because he did not recover what he contracted to receive. The restriction of coverage to physical harms to person or property excludes these claims.

Unif. Comparative Fault Act § 1(b) cmt., 12 U.L.A. 128 (1996). Thus, the official comments make clear that the Uniform Act does not encompass purely contractual claims involving economic loss rather than personal injury or property damage claims.

Based on the above factors, the United States Court of Appeals for the Eighth Circuit predicted that this court would not apply the Iowa Comparative Fault Act to a breach of express warranty claim where the plaintiff suffered economic loss but no personal injury or other property damage. *Ethyl Corp. v. BP Performance Polymers, Inc.,* 33 F.3d 23, 25 (8th Cir.1994), *cert. denied,* 513 U.S. 1153, 115 S.Ct. 1108, 130 L.Ed.2d 1073 (1995). The federal appeals court noted that in Iowa, a plaintiff can recover for purely economic loss only in contract and not in tort law. *Id.; see Nelson v. Todd's Ltd.,* 426 N.W.2d 120, 123–25 (Iowa 1988); *cf. Peterson v. Bendix Home Sys., Inc.,* 318 N.W.2d 50, 54–55 (Minn.1982) (holding that the defense of comparative fault did not apply to non-consequential damages for breach of warranty).

In the present case, the damages claimed by the Floms were purely economic. The harm alleged was to the object of the contract (the house) and not to their persons or other property. Thus, we conclude that plaintiffs' claim was contractual in nature and that the defense of comparative fault does not apply here. The trial court did not err with regard to this issue.

D. *Amount of damages.* The Stahlys challenge the trial court's method of computing damages and contend the Floms did not properly prove the amount of damages. They also argue that the court improperly excluded portions of the testimony of defendants' expert witness and improperly allowed the testimony of two witnesses for the Floms regarding the amount of damages. We do not agree.

1. Defendants Stahly argue on appeal that in a breach of express warranty action the ordinary measure of damages is the difference between the value of the item as it is and the value as it would have been had it answered to the warranty. Defendants assert that the Floms offered no such evidence

at trial and that the trial court incorrectly based its damage award on evidence of cost of repairs to the house. However, defendants concede they did not make that argument to the trial court. Thus, error was not preserved on that point.

Moreover, the purpose of awarding damages in a breach of contract action is "to place the injured party in the position he or she would have occupied if the contract had been performed." *Macal v. Stinson*, 468 N.W.2d 34, 36 (Iowa 1991). When the loss in value to the injured party cannot be proved with sufficient certainty, a breach resulting in defective construction may entitle the injured party to recover damages based on "the reasonable cost of . . . remedying the defects if that cost is not clearly disproportionate to the probable loss in value. . . ." Restatement (Second) of Contracts § 348(2)(b) (1979); *cf.* Iowa Code § 554.2714(1) (damages for nonconformity of goods may be "determined in any manner which is reasonable"); *R.E.T. Corp. v. Frank Paxton Co.*, 329 N.W.2d 416, 421 (Iowa 1983) ("In defective construction cases, damages may include diminution in value, cost of construction, and completion in accordance with the contract, or loss of rentals.").

We believe that the reasonable cost of repairs is an appropriate measure of damages in this case, given the unconventional construction techniques utilized by the Stahlys and the nature of the damage to the house. Furthermore, we find substantial evidence in the record supporting the trial court's calculation of the cost of repairs. Several witnesses for the Floms testified as to the reasonable cost of repairing various items, and numerous business invoices were received into evidence.

2. The admission of expert testimony is a matter within the trial court's discretion. *Carolan v. Hill*, 553 N.W.2d 882, 888 (Iowa 1996). We find no abuse of discretion in the trial court's evidentiary rulings regarding one expert witness for the Stahlys and two expert witnesses for the Floms. Portions of the testimony of the Stahlys' expert were excluded because the testimony had not been identified during pre-trial discovery.

*See* Iowa R. Civ. P. 125(a)(1)(A), (d). We believe that the court's decision concerning this trial management issue falls well within the scope of its discretion.

Similarly, we do not believe the court abused its discretion in allowing the testimony of two expert witnesses for plaintiffs Flom. These witnesses testified about defects in the heating system, and one of the witnesses testified about the cost of repairing the system. Although both witnesses had been designated in answers to the Stahlys' interrogatories, the damage estimate for repair of the heating system was not provided until plaintiffs supplemented their answers eight days before the start of the trial. We conclude, however, that the trial court did not abuse its discretion in determining that there was sufficient compliance with discovery rules to allow the testimony of the two witnesses. *See* Iowa R. Civ. P. 125(a)(1)(A), (c), (d).

We conclude that the trial court did not err in determining the amount of damages awarded to plaintiffs Flom.

IV. *Cross-appeal issues.* On cross-appeal, plaintiffs Flom contend the trial court erred in failing to apply the theory of implied warranty, excluding the testimony of one of their witnesses, and failing to award prefiling interest.

A. *Implied warranty.* We agree with the trial court that the theory of implied warranty is not applicable in this case. An implied warranty that a home has been constructed in a reasonably good and workmanlike manner can be shown by establishing: (1) the house was constructed to be occupied as a home; (2) the house was purchased from a builder-vendor, who constructed it for the purpose of sale; (3) the house was not constructed in a good and workmanlike manner; (4) the buyer was unaware of the defect; and (5) the buyer suffered damages. *Kirk v. Ridgway*, 373 N.W.2d 491, 496 (Iowa 1985). In this case, the Stahlys were not builder-vendors—persons in the business of building or assembling homes for the purpose of sale. *See Kirk*, 373 N.W.2d at 496. In addition, the Stahlys intended to live in the house themselves and did not construct it for the purpose of sale. Thus, key elements

for recovery under implied warranty were lacking.

The trial court did not err in refusing to apply the theory of implied warranty of fitness.

■ B. *Exclusion of expert testimony.* The Floms dispute the trial court's ruling excluding the testimony of their expert witness regarding the cost of tearing out the old heating system. However, the witness did not discuss that subject in his pre-trial deposition and was identified as an expert in that area only shortly before the trial. Exclusion of the testimony by the trial court was not an abuse of discretion under Iowa Rule of Civil Procedure 125. *See Carolan,* 553 N.W.2d at 888 (stating trial court is given discretion regarding admission of expert testimony).

■ C. *Prefiling interest.* In a post-trial motion, plaintiffs Flom requested prefiling interest. Although Iowa Code section 535.3 provides that interest on judgments shall accrue from the date of the commencement of the action, we recognize an exception to this rule and allow prefiling interest from a time prior to filing of the petition when damages become complete at an earlier particular time. *See McGough v. Gabus,* 526 N.W.2d 328, 334 (Iowa 1995). The trial court refused the Floms' request because it found that a genuine dispute existed between the parties as to the Floms' right to recover at all and as to the amount of damages. *See Brenton Nat'l Bank v. Ross,* 492 N.W.2d 441, 443 (Iowa App.1992). We agree with the trial court that this case does not fall within the exception to Iowa Code section 535.3 and therefore find no error in denying prefiling interest.

V. *Disposition.* We have considered other arguments raised by the parties and find them to be without merit. We affirm the judgment of the district court both on the Stahlys' appeal and on the Floms' cross-appeal.

Costs on appeal are taxed three-fourths to the Stahlys and one-fourth to the Floms.

**AFFIRMED ON BOTH APPEALS.**